## Hume, Sheriff, et al. v. Grant.

(Decided September 24, 1915.)

### Appeal from Boone Circuit Court.

1. Statutes—Schools and School Districts.—Section 4464b. Kentucky Statutes providing that additional territory may be added to a graded common school district upon the written request of a majority of the legal voters in the new territory is constitutional.

2. Statutes—Schools and School Districts.—The enactment of Section 4464b completely changing and revolutionizing the method of extending the limits of graded school districts, operated to repeal the provision in Section 4464 requiring two years to have intervened after the establishment of a graded school district before additional territory might be added.

3. Elections—Qualifications of Voters—How Shown.—The law prescribes the qualifications of voters, and whether one is or is not a legal voter at a particular time and place cannot be shown either by opinion or expert evidence; the facts as to the age and residence must be shown.

D. E. CASTLEMAN for appellant.

S. W. TOLIN for appellee.

Opinion of the Court by Judge Turner.—Reversing.

In 1907 the Belleview Graded School District was organized in Boone County. As originally laid off it did not embrace the property of the appellee, Grant; but in March, 1908, thirteen citizens, representing themselves as legal voters of certain territory adjacent to the graded school district, presented a petition to the county school superintendent, purporting to have been signed by each of them, asking that the territory described in the petition be annexed to the graded school district, as is authorized by Section 4464b of the Kentucky Statutes, whereupon the board entered an order reciting that the thirteen signers were a majority of the legal voters in the territory and annexing same. The territory so annexed embraced appellee's property, and this is an equitable action seeking to enjoin the collection of a tax levied upon his property by the Board of Trustees of the district.

The case was tried out in the lower court solely upon the issue as to whether the signers of the petition constituted a majority of the legal voters in the annexed territory, there being no question made in the pleadings as to the qualifications or residence of the thirteen signers of the petition; but there was an allegation in an amendment that one of them, Sam Bills, had not signed it.

The judgment of the lower court was that under the evidence there were twenty-five legal voters in the territory involved; that Sam Bills did not sign the paper presented to the County Superintendent, and that Charlie Hosley, another signer thereof, ought not to be counted because he did not at the time reside in the proposed territory to be annexed; and adjudged that a majority of the legal voters of the territory did not sign the petition, and perpetually enjoined the collection of the tax, and thereby held that the annexation had not been properly made.

There was, however, no issue made in the pleadings as to the qualifications or the place of residence of Hosley, and a fair interpretation of the pleadings is that all of the signers of the petition were residents of and legal voters in the territory proposed to be annexed; the only attack upon the paper being that Bills had not signed it.

While in the lower court the case was tried out solely on the question indicated, in this court the appellee is urging the affirmance of the judgment for two other rea-

sons, (1) because, as claimed, Sec. 4464b of the Kentucky Statutes is unconstitutional, and (2) because of the provision in Sec. 4464 requiring that two years shall intervene after a graded school district is established before additional territory may be annexed thereto in the manner prescribed by that section, the argument being that that part of Section 4464 was not repealed by Sec. 4464b.

It is unnecessary to consider the first question made as this court has recently passed upon the constitutionality of Section 4464b, and is not now inclined to recede from its opinion. Slaughterville Graded School District v. Brooks, 163 Ky., 200.

Likewise the second question made has at least indirectly been passed upon by this court in the last case cited, and in the case of Hopkins County v. Givens, 147 Ky., 837. In each of those cases it was held that the Legislature had by the enactment of Section 4464b provided an entirely new method for the extension of boundaries of graded school districts, and had therefore repealed the provisions of Secs. 4464 and 4464a in so far as they were inconsistent with the new method adopted by Section 4464b. It is apparent that the Legislature in adopting Section 4464b, and completely changing and revolutionizing the method of extending the limits of graded school districts, intended to eliminate the two-year period provided for in Section 4464, as neither that nor any other period of limitation was provided for in the last named statute.

The appellee's petition does not charge that any one of the thirteen signers of the petition was not a legal voter in the new territory, nor does it attack the genuineness of the signature of any of them except Bills. Bills' name was properly stricken from the petition by the lower court because the evidence showed he had not signed it, and this leaves twelve legal voters of the new territory, conceded by the pleadings to be such, who signed the petition.

The only question then left was as to whether these twelve legal voters constituted a majority of the legal voters in that territory, and under the state of the pleadings it was incumbent upon the appellee to show that they did not.

The character of the evidence by which he undertook to show this presents the only remaining question.

The plaintiff in his deposition states:

"Q. Was William Byers and George Hosley and Sam Bills on March 2nd, 1908, legal voters. A. Yes. Q. Give the names of any other legal voters within the annexed territory as of March 2nd, 1908, that you now remember. A. Well there is Ott Scott and William Walton, and Xen Scott, and let me see, that is all I can be sure of."

O. N. Scott, another witness for appellee, states:

"Q. Name, if you can, other persons who were in that annexed boundary in March, 1908, and legal voters? A. Well, there was George Koons, two sons, Jack and Robert; Xen Scott, William Walton, John Lambert, and James Botts, and Nicholas Fleek, Millard Fleek, John Slayback, Henry Raines, John McQuire, Wood McQuire, Merrit Sullivan, Henry Sullivan, Ed. Nixon, James Moreland, William Byers, Sam Bills, E. L. Grant and George Hosley I guess was in there—he was there after Charley was, they lived together. Q. I will get you to state whether or not R. A. Brady was in the new territory? A. Yes, sir."

R. A. Brady, another witness, states as follows:

"Q. Was you a voter down there, Bob, in 1908? A. Yes, sir."

William Walton, another witness, states:

"Q. Was Woodie Sullivan living there in 1908? A. Yes, sir. Q. Was he a voter at that time? A. Yes, sir. Q. Is that Sullivan's opinion also? A. Yes, sir, I think it is."

We have carefully examined the evidence and nowhere find in it anything to show any one of these named persons, who are claimed to have been legal voters, had lived in the precinct sixty days, or in the county six months, or in the state one year, and as to most of them there is nothing to show their age.

This evidence was specifically excepted to by the appellants, and it is urged on this appeal that it amounts to nothing more nor less than a conclusion or the expression of opinion by the witnesses that the persons named were legal voters in the annexed territory.

Whether one is or is not a voter at a particular time and place may not be shown either by opinion or expert evidence. The law prescribes the qualifications of voters, and whether one is a legal voter must be determined from the facts as to his age and the length of time of his residence and not from the bare statement of opinion by witnesses that he was a legal voter at a given time at a particular place.

Clearly such a statement, when not fortified by the facts, is merely the opinion of the witness upon a question of law, or at best only his conclusion of what the law is upon the facts in his possession, and which are not given to the court in his evidence.

To uphold such evidence as showing the legal right of one to vote at a given time and place would make the witness the final arbiter of that question, and deprive all tribunals of the right to inquire into the real facts and ascertain whether such right actually existed under the law.

To dogmatically assert that one is a legal voter at a certain time and place, without giving the facts upon which the assertion is based, is nothing more nor less than an expression of opinion by the witness that certain facts in his possession which he chooses to withhold entitle the man to vote.

We are reluctantly forced to the conclusion that this evidence was incompetent upon the issue presented by the pleadings, and that the exceptions thereto should have been sustained. With this evidence out, the plaintiff failed to sustain the only issue of fact presented by the pleadings.

The judgment is reversed with directions to dismiss the plaintiff's petition.