# Jefferson County Board Of Education et al. v. Goheen.

April 29, 1947.

Rehearing denied February 13, 1948.

Lawrence F. Speckman, Judge.

Henry M. Johnson for appellants.

Eldon S. Dummit, Attorney General, and J. L. Hughett, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The Jefferson County Board of Education and William Diemer, suing as a taxpayer and on behalf of the other taxpayers of the Jefferson County School District, instituted this declaratory judgment proceeding against Luther E. Goheen, Superintendent of the Kentucky Children's Home at Lyndon, Kentucky, to secure an adjudication of the rights of the parties relative to the furnishing of educational facilities for children committed to the Home. For many years prior to 1936 the Home was operated by the Kentucky Children's Home Society, a charitable organization. It was supported

in part by private donations, by payments from the fiscal courts of various counties from which children had been committed to the Home and by appropriations from the Legislature. In the case of Speer v. Kentucky Children's Home, 278 Ky. 225, 128 S. W. 2d 558, a plan was approved whereby the Department of Welfare of the Commonwealth took over the Children's Home in accordance with the 1936 Reorganization Act. Prior to 1936, and since that time, the Jefferson County Board of Education has included the inmates of the Home, falling within the compulsory school age limits, in its enumeration of census pupils. Until recently it has been the custom for the Home to furnish building facilities and for the County Board of Education to furnish teachers. Children reaching the high school level have been sent to the Anchorage High School, the County Board paying their tuition. In recent years what appears to have been a very unsuccessful attempt was made to send some of the children in the upper grades to a county school at Lyndon. In most cases the children from the Home were older than were the county school children in the corresponding grades and all of them for some unfortunate reason had been taken from their respective homes and committed by court order to the Home. Furthermore, since it is the policy of the institution to place as many children as possible in suitable homes, there was a constant shifting of the pupils from the Home. It requires no stretch of imagination to visualize a very unsatisfactory situation in county schools where children from the Home were in attendance. We, however, can not concern ourselves with the wisdom of the education program which the Legislature has provided or has permitted to develop for the children committed to the Home. It has long been held in this jurisdiction that schools are state and not local institutions. City of Louisville v. Commonwealth, 134 Ky. 488, 121 S. W. 411. Indeed, section 183 of our Constitution provides that the General Assembly shall by appropriate legislation provide an efficient system of common schools throughout the state.

Society is becoming much more conscious of its obligation to the underprivileged. Whether this has come about through an enlarged humanitarian concept, or whether society's selfish instincts, looking toward self-

preservation, have prompted this move, need not concern us. Within our own Commonwealth we have seen considerable progress along this line. Bowman v. Frost, Commissioner of Welfare, 289 Ky. 826, 158 S. W. 2d 945; Meredith, Attorney General, v. Ray, 292 Ky. 326, 166 S. W. 2d 437.

In a somewhat lengthy petition the appellants have made reference to plans now under consideration by the Department of Welfare for materially expanding the facilities of the Home. They allege that over a period of some 15 years the County Board of Education will be called upon to expend considerably in excess of a half million dollars for capital outlay and maintenance of a school program for the Home over and above the amounts which may be anticipated from the state per capita, which, incidentally, under KRS 157.040 can be paid only to school districts and not to another department of the state government or to a private institution. With the view of shifting the burden of maintaining an adequate school program for the children committed to the Home to the Department of Welfare, which is charged with the administration of the affairs of the Home, the County Board of Education instituted this proceeding.

A number of contentions are raised by the appellants in the 30 paragraphs of their petition, but they group them under two headings as follows:

"(A) That, Inasmuch as the Legislature Has Not Attempted to Expressly Place on Jefferson County the Unfair and Oppressive Burden of the Expenses for Educating the Children Committed From Kentucky's Other 119 Counties, it Cannot be Implied, by Any Reasonable and Fair Legal Deduction, That Such an Unjust Treatment of Jefferson County Could Have Been the Legislative Intention.

"(B) Even if Such a Fantastic Deduction, as Set Out Above, Could by Any Specious Reasoning be Imagined to Have Been the Intention of the Legislature, Then Such an Attempt by the State to do so Unjust a Thing is Expressly Prohibited by the 14th Amendment to the Constitution of the United States, and by Nine Separate and Distinct Provisions of the Constitution of Kentucky."

We will dispose of the second proposition first. For reasons hereinafter set forth we deem it unnecessary to discuss the Federal and State constitutional questions raised by the appellants, because we do not think the program of education which the Legislature has authorized or has permitted to develop for the children in the Home runs afoul of either the Federal or State Constitutions.

At the outset, we may say it is our view that the Legislature should give immediate consideration to the development of an adequate program of education for the children in the Home from funds appropriated to the Department of Welfare and administered by it. In a limited sense children committed to the Home are atypical rather than typical children. This does not mean that they are maladjusted or necessarily of low mentality. Because of social, economic or other circumstances peculiar to their homes, the local officials have seen fit to commit them to the Home for their own well-being.

The Legislature has provided reasonably adequate facilities for the education of the blind and deaf in institutions wisely placed under the control of the State Board of Education. These institutions are primarily educational institutions of a special type, and those committed to them are not to be classed with those committed to the Home. Incorrigibles and delinquents may be committed to the Houses of Reform which have been placed under the Department of Welfare. While special educational programs are carried on in the latter institutions from funds appropriated to the Department of Welfare, the primary function of those institutions is not educational, but rather corrective. They are attempting to rehabilitate those committed to their charge in order that they may assume the status of respectable citizens and contributing members of society. It follows, therefore, that we are not impressed with the argument that it would be just as logical for the Legislature to place the burden of educating those confined to the Houses of Reform, which are located in Fayette County, upon the Board of Education of that County as it is for the burden to be placed upon the Jefferson County Board of Education for the education of the children committed to the Home.

We can think of no legitimate argument against the appropriation of an adequate sum of money to set up a much needed program of education which, undoubtedly, would require many special features, for children in the Home over and above the amount furnished now to the Jefferson County Board of Education in the way of per capita.

By legislative enactment the City of Louisville and Jefferson County maintain an institution for children of the type committed to the Home. A number of these children are placed in institutions, Ormsby Village for the whites, and Ridge Crest for the colored, but the great majority of the 2250 children committed to the Board's care last year were placed in "boarding homes" and the like. We can think of no plausible argument for requiring the Jefferson County Board of Education to assume a financial burden over and above the amount it receives in the way of per capita for educating children committed to the Home from the other 119 counties in the State, but is this only an inequity or an unconstitutional provision? It is obvious from what has already been said that we think it is only an inequity. While we do not deem the point to be of controlling weight in this discussion, it is quite probable that many compensating economic factors could be brought to light because of the maintenance of an institution the size of the Home in rural Jefferson County.

It seems to us that the primary question involved relates to the residence of the children committed to the Home. The prayer of the appellants' petition follows: "Wherefore, Plaintiff Prays that this court decree that it is not the duty of plaintiff, the Jefferson County Board of Education, to expend any of its tax funds, raised from Jefferson County, to train and educate any of the wards and public charges of the State of Kentucky, or of the other 119 Counties of the State, which wards and charges are in custodia legis, or in the custody of the Court, temporarily detained in the State's Children's Home Institution in Lyndon, Kentucky; and plaintiffs pray for their costs herein expended and for all further proper and equitable relief."

The appellants take the position that the children confined in the Home are still in the custody of the

courts which committed them thereto. We can not agree with this argument. While it is true that, under KRS 199.130 those courts may, upon a proper showing, make orders relating to the custody of the children committed to the institution by them, they do not stand in loco parentis to the children. When a child enters the Home he is in the custody of the superintendent thereof. It is the Home, through its officers, that stands in loco parentis to the child. The institution has full charge and custody of him and the Legislature has made it a duty of the Home, through its officials, to care for the child's well-being. It is the duty of the Home to place children in private homes and not that of the courts of the counties from which the children were committed. In a sense, the Home is a distributing center for dependent and neglected children.

So long as such children remain in the Home, it stands in loco parentis to them and they are residents of the school district in which the Home is located, namely the Jefferson County School District, and the Jefferson County Board of Education not only should but must include them in its enumeration of census pupils. The cases of Crain v. Walker, 222 Ky. 828, 2 S. W. 2d 654; Wirth v. Board of Education for Jefferson County, 262 Ky. 291, 90 S. W. 2d 62; and Board of Education of Louisville v. Board of Education for Jefferson County, 265 Ky. 447, 97 S. W. 2d 11, support this statement. Certainly, children committed to the Home could not be included in the school census of the district where they originally resided. In the Crain Case it was held that children committed to a Baptist Orphans' Home located in the Glendale Graded School District in Hardin County were residents of that school district because the school stood in loco parentis to them. It was held that the school district should include the children in the Orphans' Home in its enumeration of census pupils and a plan was approved whereby the district furnished teachers for the pupils residing in the Orphans' Home; and also that this was not in violation of the constitutional provision prohibiting an appropriation for a sectarian school. Ky. Constitution, section 189. In the Wirth Case it was held that a child who had been committed to the Louisville and Jefferson County Children's Home and then placed in a "board-

ing home'' located in the Jefferson County School District was a resident of that district and entitled to be included in the enumeration of census pupils for that district and to receive his education free of charge therein. The contention that the Children's Home should pay his tuition to the Jefferson County Board of Education was overthrown. The reason for the ruling was that the person with whom the child had been placed stood in loco parentis to him. What was contended to be dictum relative to the residence of the child in the Wirth Case was adopted as the ruling of the court, or ''stictum,'' on the question in the case of Board of Education of Louisville v. Board of Education of Jefferson County, supra.

For the reasons given we think the judgment should be and it is affirmed.