# Settle et al. v. Jones et al.

November 18, 1947.

W. B. Ardery, Judge.

Polk South and Funk, Chancellor & Darnell for appellants.

Marion Rider and Frank M. Dailey for appellees. .

OPINION OF THE COURT BY CHIEF JUSTICE SIMS—Affirming.

Appellants, J. W. Settle and Forest Moore, as citizens, taxpayers, users of water and electricity, as well as members of the common council of the City of Frankfort, instituted . this declaratory judgment action against the other members of that body, the Mayor and the members of the electric and water plant board of the city (hereinafter referred to as the Board) wherein they attacked the constitutionality of Senate Bill 172, Chapter 212, Acts of 1946, now KRS 96.171 to 96.188, 1946 Ed. Also, they questioned the validity of an ordinance passed by the city council on June 6, 1947. A general demurrer was sustained to the petition, which was dismissed upon appellants declining to plead further, and this appeal followed.

In 1946 the city acquired by purchase from the Associated Gas & Electric Company the combined water and electric plant which served the citizens of Frankfort. In Cawood v. Coleman, 294 Ky. 858, 172 S. W. 2d 548, we held that the city under its general powers was authorized to acquire this combined plant, as neither the TVA Act KRS 96.550 to 96.900 (authorizing the city to acquire an electric plant,) nor KRS 96.350 (authorizing it to acquire a water system,) provides for a third class city to acquire a unified electric and water system. Both the TVA Act and the statute relating to a water system owned by a third class city make provision for the removal of the operation of these utilities from politics. But as just stated, neither of these statutes apply to a unified electric plant and water system; consequently, neither removes the operation of such a plant from political interference. To allow third class cities owning and operating a combined electric and water system to escape political interference and nepotism in the operation of such utilities, if the city

-so desired, the 1946 General Assembly enacted Senate Bill 172.

This 1946 Act is closely patterned after the TVA Act and provides that any third class city by enacting an ordinance may elect to operate its combined utilities under the provision of the Act. The mayor or chief executive of the city may appoint a board of public utilities, subject to the approval of the governing body of the municipality. No person shall be appointed a member of the Board who has within two years next before appointment held any public office, or who is related within the third degree to the mayor or any member of the governing body of the municipality. The salary of each member of the Board shall be fixed by it at not exceeding $1000 per annum, and the Board shall employ a Superintendent, qualified by education, training and experience to operate the plant, at a salary of not exceeding $5000 per annum; such salaries shall constitute a cost of operation and maintenance of the plant. The Superintendent, subject to the approval of the Board, shall appoint all employees and fix their duties and compensation. All power of the municipality to operate, maintain, improve and extend electric and water service, as well as to fix rates, shall be exercised on its behalf by the Board. Any member of the Board may be removed from office for inefficiency, misfeasance, malfeasance or neglect of duty by the governing body of the municipality; but that body may only terminate the operation and management of the plant by the Board after submitting the question to a vote of the people.

The ordinance creating the Board was adopted by the favorable vote of seven of the twelve members of the city council. It is contended by appellants that as the salaries of the Board members and of the Superintendent were indirectly fixed by the ordinance adopting the terms of the statute, the same was not duly passed by the council, since KRS 85.110 (2) provides that all ordinances fixing salaries in third class cities shall be passed by a vote of two-thirds of the members of the council. The answer to this contention is that the statute relates to salaries payable out of the general fund of the city and does not apply to salaries of members of the Board and of the Superintendent, which are paid out

of the proceeds from the operation of the electric and water plant, a project financed from revenues received from the plant for which the credit of the city is not pledged.

Appellants urge that the 1946 Act relates only to Frankfort, since they say it is the only third class city which operates a unified electric and water plant, therefore it violates subsection 29 of sec. 59 and sec. 60 of our Constitution. If it were true that Frankfort is the only third class municipality which now maintains a combined electric and water plant, that fact would not prevent the Act from applying to all third class municipalities operating such plants. We held that a statute authorizing first class cities to construct, maintain and operate toll bridges across navigable streams so as to connect such cities with adjoining states was not special legislation, although Louisville is the only first class city in the State. Klein v. City of Louisville, 224 Ky. 624, 6 S. W. 2d 1104. The Act before us recites that any third class municipality now or hereafter owning and operating a combined electric and water plant may elect to come under it. This provision brings the Act within the reasoning followed in Bryan v. Voss, 143 Ky. 422, 136 S. W. 884, relied upon by appellants, since it makes the Act available to all third class cities owning and operating combined electric and water plants. However, it might be said in passing that Frankfort is not the only third class municipality owning and operating such a combined plant. Corbin, a third class city, for years has owned and operated such a plant. Eagle v. City of Corbin, 275 Ky. 808, 122 S. W. 2d 798.

Nor are appellants correct in their contention that the statute under which the Board was created confers legislative powers upon the Board, thereby bringing it in conflict with sec. 160 of our Constitution. The Board here has about the same powers that an Act of 1928 conferred upon the Bridge Commission, which Act was before us in the Klein case, 224 Ky. 624, 6 S. W. 2d 1104. There, the Commission was authorized to construct, maintain and operate a bridge and was given the authority to fix tolls. We said in the Klein opinion that the Commission functioned as an administrative body to carry out the legislative intent, and in so doing it neces-

sarily was vested with some discretion. That rule was followed in the recent case of Dieruf v. Louisville & Jefferson County Board of Health, 304 Ky. 207, 200 S. W. 2d 300. See Covington Bridge Commission v. City of Covington, 257 Ky. 813, 79 S. W. 2d 216; Keller v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 272, 130 S. W. 2d 821; City of Portland v. Welch, 154 Or. 286, 59 P. 2d 228, 106 A. L. R. 1188, for an extended discussion of the question.

Lastly, appellants insist that the statute places absolute and arbitrary power in the Board and grants its members exclusive privileges, in violation of secs. 2 and 3 of our Bill of Rights. The same argument was made in the Covington Bridge case, 257 Ky. 813, 79 S. W. 2d 216, but we rejected it. The statute plainly vests in the governing body of the city the supervision and control over the Board.

Nor is there a violation of sec. 3 of the Bill of Rights (forbidding the grant of exclusive privileges) by the fact that the statute forbids an appointment to the Board of one who has within two years held public office, or who is related within the third degree to the mayor or any member of the governing body of the city, and further forbids the Board or Superintendent from appointing to any subordinate office or from employing in any capacity any person so related to any member of the Board or to the Superintendent. We have held in a long line of cases that this section does not prevent a statute from making reasonable classifications, and it is only where classifications are arbitrary and unreasonable, so as to exclude one or more of a class without a reasonable basis, that the Act is void. Burrow v. Kapfhammer, 284 Ky. 753, 145 S. W. 2d 1067, 1070; Fraysure v. Kentucky Unemployment Compensation Commission, 305 Ky. 163, 202 S. W. 2d 377. It is evident that the General Assembly intended to give third class cities owning and operating a combined electric and water plant the right, if they so desired, to put the operation of these utilities beyond the realm of political interference, as well as to prevent the practice of nepotism in the selection of all Board members and employees. It cannot with reason be said that by employing the restriction it did on Board mem-

14

bers, the Superintendent and employees, the General Assembly acted arbitrarily and without a reasonable basis.

The judgment is affirmed.