**BOARD OF EDUCATION OF FAYETTE COUNTY et al. v. BOARD OF EDUCATION OF LEXINGTON INDEPENDENT SCHOOL DIST. et al.**

Court of Appeals of Kentucky.

June 20, 1952.

Rehearing Denied Sept. 26, 1952.

Cornelious W. Grafton, Wyatt, Grafton & Grafton, Louisville, Lasserre Bradley, Lexington, for appellants.

Yancey, Martin & Ockerman, Lexington, for appellees.

CULLEN, Commissioner.

This appeal raises a number of questions growing out of an election in the Fayette

County School District, on April 14, 1951, at which the voters approved the levy of a special school building fund tax, under KRS 160.477.

The primary question is whether property which was located in the county school district at the time the tax was voted, and which subsequently is transferred to the City of Lexington Independent School District by proceedings under KRS 160.045, will remain liable for the voted tax during the 20-year period for which the tax was voted. Involved in this question is the question of whether KRS 160.045 is constitutional. The circuit court held that KRS 160.045 is constitutional, and the Board of Education of Fayette County appeals from that holding. The circuit court further held that property transferred to the city school district, pursuant to KRS 160.045, will remain liable for the voted tax, and there is an appeal from that holding by the city school board and by certain property owners who are parties in a representative capacity.

A further question, in the event it should be held that property transferred to the city school district is not liable for the voted tax, is whether the city school district itself should be held liable, under KRS 160.065, for a proportionate part of revenue bonds that may be issued by the county school district in reliance on the voted tax. The circuit court found it unnecessary to pass on this question, in view of its holding on the primary question.

A number of other questions were raised and passed on in the circuit court, but for reasons stated at the end of this opinion, we think those questions were not properly subject to determination in this case.

█ We will consider, first, the matter of the constitutionality of KRS 160.045. This statute provides, in substance, that when territory located in a county school district has been annexed to a city, 75 percent of the owners of real property in the territory may petition the city school board to be taken into the city school district, and if the city school board approves the petition, the territory will be transferred to the city school district, regardless of whether the county school board approves the

transfer. Mr. J. Harry Stamper, an intervenor in this case on behalf of the children of the Fayette County School District, contends that the statute does vest some control in the county school board, and that the courts cannot compel a transfer of territory to the city school district where the county school board has valid reasons for opposing the transfer; but we do not so construe the statute.

In Board of Education of Kenton County v. Mescher, 310 Ky. 453, 220 S.W.2d 1016, this Court held KRS 160.045 to be constitutional, as against the contention that it violated sections 51, 59(29) and 60 of the Kentucky Constitution. The appellant Fayette County Board of Education, in the case now before us, maintains that the statute violates sections 2, 19, 52 and 183 of the Constitution.

█ The argument that the statute violates sections 2 and 183 of the Constitution is based on the theory that the statute deprives the boards of education of their responsibility for the school system, and vests absolute and arbitrary power in the property owners. We do not concur in this view. Actually, the city school board exercises complete control as to whether the territory shall become a part of the city school district. The property owners are given no power to effect a transfer; they are merely permitted to file a petition expressing their wishes. The situation is the same as if the city school district was given power to annex territory in the county school district, subject to a favorable vote of 75% of the property owners in the territory. For many years the statutes have authorized a city to annex all or part of the territory of another city, subject to approval of the voters (see KRS 81.120, 81.150, 81.160, 81.190, 81.200, 81.240, 81.250), and such statutes have been held valid. Pence v. City of Frankfort, 101 Ky. 534, 41 S.W. 1011.

█ As we pointed out in Board of Education of Kenton County v. Mescher, 310 Ky. 453, 220 S.W.2d 1016, school districts are creatures of the legislature, and the legislature has the power under section 183 of the Constitution, to alter them or even do away with them entirely. We are

of the opinion that KRS 160.045 does not violate section 2 or section 183 of the Constitution, notwithstanding that the county school district is given no voice in the loss of its territory.

 The argument that KRS 160.045 violates sections 19 and 52 of the Constitution is based on the theory that the voting of the building fund tax created a contractual indebtedness on the part of the property owners of the county school district, and that if the property is permitted to escape the tax by becoming a part of the city school district, the obligation of contracts will be impaired in violation of section 19 and indebtedness will be released or extinguished in violation of section 52. For reasons that will hereinafter be stated, we are of the opinion that the voting of the tax did not create an indebtedness for the amount of levies to be made in the future.

We hold that KRS 160.045 is constitutional.

As stated at the outset of this opinion, the primary question on this appeal is whether property transferred to the city school district will remain liable for the special school building fund tax, during the 20-year period for which the tax was voted. The question relates only to tax levies made after the transfer has been effected, it being agreed by all parties that transferred property will be liable for any tax levy actually made before the transfer.

The tax was voted in the Fayette County School District at an election held on April 14, 1951. The question of voting the tax was submitted to the voters under KRS 160.477, enacted in 1950, which provides, in part:

"(1) (a) Upon request of the board of education of any school district, the tax levying authority of the district shall adopt an ordinance or resolution submitting to the qualified voters of the district, the question as to whether a special school building tax rate of not less than five cents nor more than fifty cents as requested by the board shall be levied on each one hundred dollars of property subject to local taxation. This tax levy shall be in addi-

tion to the maximum school tax levy provided by KRS 160.475. The income from the tax shall be used for the purchase or lease of school sites and buildings, for the erection and complete equipping of new school buildings, for the major alteration, enlargement and complete equipping of existing buildings, for the purpose of retiring, directly or through rental payments, school revenue bonds issued for such school building improvements, and for the purpose of financing any program for the acquisition, improvement, or building of schools. The question shall be so framed that the voter may by his vote answer 'For' or 'Against.'"

The question submitted to the voters of the Fayette County School District was:

"Are you for or against levying in Fayette County District, each year for 20 years, a special school building fund tax in addition to the maximum school tax levy as provided by law, at the rate of 32 cents on each $100.00 of property subject to school taxation in said District, the proceeds thereof to be used for [here followed a statement of the purposes set forth in KRS 160.-477(1) (a)] * * *."

At the time of the election, and at the time this action was instituted, the maximum regular school tax of $1.50 per hundred dollars of assessed valuation (see KRS 160.475) was being levied in the Fayette County School District.

It is stated in the pleadings and in the briefs that the county school district desires to undertake a comprehensive building program, to be financed through the issuance of revenue bonds under the plan provided for in KRS 162.120 to 162.300. This plan contemplates that the building sites will be conveyed to the fiscal court; the fiscal court will issue revenue bonds and construct the buildings; and the school district will rent the buildings from the fiscal court, on a year-to-year basis (KRS 162.-140, 162.300). The bonds are payable solely from the revenue derived from the rentals and do not constitute an indebtedness of the county or of the school district (KRS 162.190, 162.300).

It is clear that the issues in this case grow out of the proposed revenue bond plan, it being desired to know what revenues from the special building fund tax can be relied upon as a potential source for the payment of rentals for the school buildings, which rentals will go to retire the bonds. If the county school district cannot be assured that all property in the district at the time the tax was voted will remain liable for the tax, the district will not be able to undertake as large a building program as it has planned.

It appears to us that the county school district desires, in effect, to pledge the voted tax towards the payment of the revenue bonds, notwithstanding that the statute specifically provides that the bonds shall be payable only from the revenues derived from the school buildings. In one place in the brief for the county school district, reference is made to the issuance of revenue bonds "in anticipation" of continuing revenues from the voted tax, and in another place reference is made to financing undertaken "in reliance" on the voted tax.

■ We think it is clear that if the question of incurring an indebtedness and issuing general obligation bonds had been submitted to the voters in accordance with section 157 of the Constitution, and had received the required two-thirds vote in favor, then property in the district at the time the vote was taken would remain liable for the tax required to pay the indebtedness, regardless of the transfer of the property to another school district. Carpenter v. Town of Central Covington, 119 Ky. 785, 81 S.W. 919. It seems to us that the Fayette County School District is seeking to achieve the same result without complying with section 157.

■ When the voters of a governmental unit have authorized the incurring of an indebtedness, the property then within the boundaries of the unit should be held responsible for the payment of the indebtedness, because money will have been advanced on the faith and credit of the vote. But in the case of revenue bonds, the bondholders are not entitled to look to any source of payment other than the reve-

nues of the bonded project, and they are not entitled to place faith and credit in any tax resources of the governmental unit. As a business matter, the bondholders may take into consideration the potential tax resources, but as a legal matter they are not entitled to rely upon any tax resource.

Counsel for the county school district concede that the proposed revenue bonds will not constitute an indebtedness of the school district, and that the voting of the tax did not create an indebtedness of the district. However, they argue that the voting of the tax created an indebtedness of the property owners in the district.

■ In our opinion, the voted tax has no aspects of an indebtedness, because there can be no debtor without a creditor. Here, the county school district cannot be the creditor, because under section 157 of the Constitution the district has no right to anticipate more than one year's taxes at a time, without a two-thirds' vote of the people. The bondholders cannot be creditors, because they are not entitled to look to the voted tax for the payment of their bonds.

In Fendley v. Board of Education of Oldham County, Ky., 240 S.W.2d 837, 839, which involved a tax voted under KRS 160.477, this Court said:

"* * * The tax is not automatic, and the voters have only authorized an increased levy when in the discretion of the Board it appears expedient for the betterment of the school system."

We also quoted with approval the following statement from City of Florence v. State ex rel. Burtwell, 211 Ala. 617, 101 So. 462, 464:

"* * * It is not a levy of a tax, but a mere grant of authority to the taxing power * * * to levy the tax, if they see proper to do so. A vote in favor of the excess tax under the ballot here in question was not in itself a levy of tax in perpetuity, but was a grant of authority to the taxing power * * * to levy the tax from year to year, so long as they saw fit and deemed it wise and necessary."

Counsel for the county school district seek to distinguish the Fendley case, on the ground that in that case the tax was voted in an indefinite amount, from 5 cents to 39 cents, and for an indeterminate period. We do not find any basis for distinction on that ground. Regardless of time or amount, the principle remains the same, that the voting of the tax does not impose a tax in futuro, but merely grants authority to the taxing power to increase the amount of annual tax that the law otherwise authorizes to be levied.

It is our opinion that the tax voted under KRS 160.477 is leviable, each year, only upon property that is within the county school district at the time the annual levy is made, and that the lower court erred in holding otherwise.

The county school board contends that, if property transferred to the city school district is held not to be liable for the voted tax, then the city school district should be held liable for a proportionate part of the revenue bonds that may be issued by the county school district, by virtue of KRS 160.065, which provides:

"When any property assessable for school purposes in one school district is annexed by or transferred to another school district, the recipient district shall assume a part of the indebtedness, if any, of the other school district incurred for school buildings and grounds in the proportion the assessed valuation of property taxable for school purposes transferred bears to the total assessed valuation of property taxable for school purposes in the district losing the territory."

We think this contention is fully answered by the opinion in Sanitation District No. 1 v. City of Louisville, 308 Ky. 368, 213 S.W.2d 995, in which we said that to make an annexing municipal corporation liable for revenue bonds of the annexed municipal corporation would amount to translating a private debt into a public debt. In addition, KRS 160.065 by its very terms is limited to assumption of "indebtedness," and it is agreed by all parties that revenue bonds do not constitute an indebtedness of the issuing school district.

Paragraph 15 of the judgment appealed from declares that, if the City of Lexington School District should vote to levy a school building fund tax, after property has been transferred to the city district from the county district, the transferred property will be liable both for such city tax and for the county school building fund tax. Paragraph 17 of the judgment declares that the fiscal court will have power to levy the county school building fund tax on property transferred to the city school district. In view of our holding on the primary question in this case, the above two declarations should be eliminated from the judgment.

Paragraph 16 of the judgment declares that property transferred from the city school district to the county school district, after the date on which the county school building fund tax was voted, will be liable for the tax. No justiciable controversy was presented concerning this question, and we think the court should not have made a declaration on the question. See Section 639a–6 of the Civil Code of Practice.

The judgment is reversed:

1. In so far as it declares that property transferred to the city school district will remain liable for the county school building fund tax, with directions to enter a judgment declaring that any property transferred to the city school district is not liable for any such tax not levied prior to the transfer.

2. In so far as it fails to make a declaration concerning KRS 160.065, with directions to enter a judgment declaring that KRS 160.065 does not impose any liability upon the city school district with respect to revenue bonds of the county school district.

3. In so far as it declares that property transferred to the city school district will be liable for a city school building fund tax if one is voted; and that property transferred from the city school district to the county school district will become liable for the county school building fund tax; and that the fiscal court may levy the county school building fund tax on property transferred to the city school district; with di-

rections to make no declaration on these questions.

In all other respects the judgment is affirmed.