**BOARD OF EDUCATION OF JEFFERSON COUNTY, Kentucky, etc., Appellant,**

v.

**BOARD OF EDUCATION OF LOUISVILLE, Kentucky, etc., et al., Appellees.**

Court of Appeals of Kentucky.

June 18, 1971.

Rehearing Denied Dec. 3, 1971.

Joseph E. Stopher, Edward H. Stopher, Boehl, Stopher, Graves & Deindoerfer, E. Preston Young, Louisville, for appellant.

Henry Triplett, James Thornberry, Frank A. Logan, J. Bruce Miller, James N. Williams, Jr., J. Kendrick Wells, III, Jon L. Fleischaker, Louisville, for appellees.

James P. Hallihan, pro se.

VANCE, Commissioner.

At issue is the constitutionality of Chapter 189 (House Bill 158) of the Acts of the General Assembly of Kentucky at the 1970 Session now codified as KRS 160.047 and 160.049.

Before the enactment of House Bill 158, the transfer of adjacent areas from one school district to another was controlled in every county in the state by KRS 160.045. House Bill 158 exempted counties containing a city of the first class from the provisions of KRS 160.045 and created a new procedure for transferring adjacent areas from one school district to another in those counties.

The basic differences in the two procedures concern (1) the method in which a proposal to initiate a transfer may originate (2) the discretion that may be exercised by school administrative authorities regarding the propriety of a transfer, and (3) the mechanics of adjusting and settling equitable terms for the transfer.

Following the enactment of House Bill 158 a petition was filed with the Jefferson County Fiscal Court seeking the transfer of a described area from the Jefferson County School District to the Louisville Independent School District. The fiscal court referred the petition to the Board of Registration and Purgation to determine if the requisite number of voters had signed the petition.

At this juncture, the Jefferson County Board of Education filed this action attacking House Bill 158 upon two constitutional grounds. It claimed that the Act constitutes local or special legislation in violation of Sections 59 and 60 of the Constitution of Kentucky and that the Act runs afoul of the separation of powers doctrine in that it imposes upon the judiciary a nonjudicial function.

The pertinent parts of Section 59 of the Constitution read as follows:

"The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: * * *.

"Twenty-fifth: To provide for the management of common schools. * *.

"Twenty-ninth: In all other cases where a general law can be made applicable, no special law shall be enacted."

Section 60 of the Constitution provides:

"The General Assembly shall not indirectly enact any special or local act by the repeal in part of a general act, or by exempting from the operation of a general act any city, town, district or county; * * *."

■ These provisions of the Constitution clearly prohibit any local or special act with reference to the management of public schools or in any case where a general law can be made applicable.[1] Likewise the General Assembly is prohibited from indirectly enacting special legislation by the exemption of a county from the operation of a general law.

■ A local act is one confined to territorial limits other than that of the whole state or one which is applicable to some political subdivision and not to others. A special law is legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favors others. City of Louisville v. Klusmeyer, Ky., 324 S.W.2d 831 (1959).

■ Nevertheless, the General Assembly may indulge in class legislation if the classification is made to depend upon natural, real or substantial distinctions, inhering in the subject matter, such as suggest the necessity for or propriety of independent legislation in regard to the class specified. A classification based upon purely artificial, arbitrary or fictitious conditions is unreasonable and will not be permitted. Reid v. Robertson, 304 Ky. 509, 200 S.W.2d 900 (1947).

■ Section 156 of the Constitution of Kentucky permits classification of cities upon the basis of size alone for the purpose of their organization or government and matters relating thereto. In other cases classification of cities and counties by size and population is permissible only if the size and population of itself has an appreciable relevancy to the subject matter of the legislation. Mannini v. McFarland, 294 Ky. 837, 172 S.W.2d 631 (1943); James v. Barry, 138 Ky. 656, 128 S.W. 1070 (1910); Droege v. McInerney, 120 Ky. 796, 87 S.W. 1085 (1905) and City of Louisville v. Klusmeyer, supra.

The repeated attempts of the General Assembly to enact legislation applicable to only a portion of the state based upon a classification of cities or counties containing cities of a specified class have precipitated a great volume of litigation. In James v. Barry, supra, and Mannini v. McFarland, supra, this court reviewed the various factors relating to proper classification for legislative purposes. We said in James v. Barry and quoted with approval in Mannini the following:

" 'For certain purposes classification by population and its density are not only natural and logical, but any other basis would be unscientific and unsatisfactory. * * * But it was always pointed out, or plainly to be seen, that the legislation was also of a class which it was legitimate to classify upon the basis of population. On the other hand, instances have occurred where it was attempted to classify subjects by the sizes of cities where the question of the density of population had no appreciable relevancy to the subject. Such, for example, making a statute of six-month limitations to actions of tort or for salaries against a city of the first class, whereas the general law was one year, or five years. City of Louisville v. Kuntz, 104 Ky. 584, 47 S.W. 592. * * *

" 'When the subject-matter is purely one of municipal government, it is clearly competent for the Legislature to classify

---

1. Although Section 183 of the Kentucky Constitution provides that the General Assembly shall, by appropriate legislation, provide for an efficient system of common schools, we have held that such legislation is not appropriate if it contravenes another constitutional provision of equal dignity. Board of Education of Louisville v. Board of Education of Jefferson County, Ky., 458 S.W.2d 6 (1970).

it alone upon number and density of population, as the Constitution implies if it does not expressly allow. When the subject is one that reasonably depends upon or affects the number and density of population as a correlative fact in the scheme of the particular legislation, then such classification is allowable. There are even perhaps other instances justifying such classification. But where the subject is one of general application throughout the state, and has been so treated in a general scheme of legislation, distinctions favorable or unfavorable to particular localities, and rested alone upon numbers and density of population, are invidious, and therefore offensive to the letter and spirit of the Constitution. * * *' ''

■ In every instance when legislation is made applicable to a defined class, a question arises as to whether the classification of the objects of the legislation is reasonable and proper. As is often the case, it is impossible to formulate any one rule which is broad enough to cover all the various situations which may be presented. Of necessity each classification must be considered in the light of the facts peculiar to it.

The legislative classification in this case is by counties and those counties containing a city of the first class are placed in a separate classification. The object of the legislation is to provide a method for the transfer of adjacent areas from one school district to another. Whether the classification is reasonable and proper depends upon the determination of this question: "Does a county which has within its boundaries a city of the first class have such different circumstances and problems relating to the transfer of adjacent territories from one school district to another as to reasonably justify a separate procedure for such transfers applicable exclusively in such counties?" Reference to the Act in question clearly establishes that it provides a procedure for transferring areas from one school district to another in counties containing a city of the first class which is separate and distinct from the procedure which must be used in all the other counties.

Let us look at the differences in the procedure.

TRANSFERS IN COUNTIES NOT CONTAINING A CITY OF THE FIRST CLASS

1. The proposal to transfer territory may be initiated by either of the affected school boards or by petition of seventy-five percent of either the registered voters or property owners within the area.

2. If the boards of education of the affected districts fail to agree, either board may petition the Superintendent of Public Instruction for approval of the transfer. If the Superintendent of Public Instruction is unable to arrive at a satisfactory agreement with the two boards, either board may request that the matter be brought before the State Board of Education for hearing.

TRANSFERS IN COUNTIES CONTAINING A CITY OF THE FIRST CLASS

1. The proposal to transfer can be initiated only by filing a petition with the fiscal court containing signatures of twenty-five percent of the registered voters of the area. The affected boards of education may not initiate a proposed transfer.

2. If the petition is valid the matter shall be submitted to a vote and if approved by the voters of the area, the transfer shall be made. Neither of the affected boards of education nor the Superintendent of Public Instruction is permitted any discretion as to the propriety of the transfer. Once the transfer is mandated by the voters, if the affected boards of education cannot agree upon the terms of the transfer, the matter is submitted to the courts for settlement upon equitable terms.

What circumstances prevail in counties containing cities of the first class which justify a separate procedure? The appellee contends that the size of first-class cities creates special problems in that the growing population necessitates the creation of new schools and adequate space to locate new schools is not available within the limited boundaries of the independent school district. The location of new schools outside the district frequently leads to petitions for transfer of the area into the district.

Appellee also contends that the magnitude of the problems which must be faced in settling the terms of transfer of an area between a county and an independent school district is much greater in counties which contain a city of the first class than in other counties.

It may be conceded that the size and the growth of the population in counties containing cities of the first class may necessitate the transfer of adjacent areas from one school district to another more frequently than elsewhere but the fact that the problem arises more often does not of itself indicate that the general law enacted to deal with the problem is inadequate. Granted also that the magnitude of problems encountered in settling the terms of the transfer is greater, yet there is no showing that the administrative machinery for settling the terms of the transfer through the office of the Superintendent of Public Instruction and the State Board of Education as provided by the general law is inadequate. Cf. Nuetzel v. State Tax Commission, 205 Ky. 124, 265 S.W. 606 (1924).

If it is proper for the boards of education, Superintendent of Public Instruction and the State Board of Education to exercise some discretion regarding the propriety of transfers of adjacent territory from one school district to another in all counties except those containing a city of the first class, what circumstances are so different as to justify depriving those agencies of that discretion in counties containing a city of the first class? We see none.

On the other hand if it is proper to allow the voters of an area to determine the propriety of the transfer in some counties, what are the circumstances that make it improper for the voters to have this option in all other counties? We see none.

Neither the size nor population of the area nor the fact that the problem may occur more frequently in the more populous areas has any natural relationship to the object of the legislation. House Bill 158 violates both Sections 59 and 60 of the Constitution. It creates a procedure which is limited without any reasonable basis to counties containing cities of the first class when it could have been made universally applicable throughout the state. It is thus local in nature. It also exempts counties containing a city of the first class from the operation of a general law without any sufficient or reasonable basis for such exemption and thereby violates Section 60 of the Constitution.

The statute is subject to the further vice that a county containing a city of the first class may also contain a city of some other class with an independent school district. Thus an independent school district in a fourth-class city in Jefferson County would be required to use an entirely different procedure to annex adjacent areas to its independent school district from the procedure used by independent school districts in fourth-class cities in all the remaining counties in the state. No justification for this disparity has been suggested.

The appellee relies upon Sims v. Board of Education of Jefferson County, Ky., 290 S.W.2d 491 (1956) and Board of Education of Kenton County v. Mescher, 310 Ky. 453, 220 S.W.2d 1016 (1949). These cases are not controlling. In Mescher the statute prescribed procedures for annexation by school districts in cities of the fifth and sixth classes. Before the case was

decided, the Act was amended and became applicable to cities of all classes.

In Sims, a tax for school purposes limited in application to schools in counties containing a city of the first class was sustained upon the basis that the need for additional revenue was substantially greater in such counties. In that case size and growth of population peculiar to counties containing first-class cities were determined to be so relevant to revenue requirements as to justify legislation for that particular classification, whereas no such relevancy exists between the size of the county and the procedure for annexation in school districts. The relevant considerations are the same in small and large communities. That this is true is indicated to some extent by the fact that the Superintendent of Public Instruction is required by KRS 160.045(2) to give consideration to precisely the same factors in approving transfers in every county that the courts are required to consider in determining equitable terms for transfer in counties containing a city of the first class pursuant to the provisions of House Bill 158.

Since the judgment must be reversed upon the basis of the improper classification, we do not deem it necessary to review the question of whether the Act unconstitutionally imposes nonjudicial functions upon the judiciary.

The judgment is reversed with directions that a new judgment be entered consistent with this opinion.

MILLIKEN, C. J., and OSBORNE, REED and EDWARD P. HILL, Jr., JJ., concur.

Individual dissenting opinions by PALMORE and STEINFELD, JJ.

1. That such a classification exists with regard to the maximum tax rates permitted the various school districts is not made less so by the fact that an escape hatch is available in the form of a public vote.

NEIKIRK, J., joins in the dissents.

PALMORE, Judge (dissenting).

If the legislature may validly classify each of 200 or so different school districts solely on the fortuitous basis of what its individual tax assessment may have been at a given time prior to Russman v. Luckett, Ky., 391 S.W.2d 694 (1965), as today held in Miller v. Nunnelley, Ky., 468 S.W.2d 298 (1971),[1] I see no constitutional reason why it may not provide for Jefferson County, upon the basis of its density of population, a special method of changing school district boundaries.

If City of Louisville v. Commonwealth, 134 Ky. 488, 121 S.W. 411 (1909), in which a statute pertaining to school taxes in Louisville alone was held not to be special legislation, is still good law it seems to me that the same reasoning applies to legislation dealing with school district boundaries. I doubt the wisdom of this statute, and I am not free of doubt on the constitutional point, but it is not a court's province to pass on the wisdom of a legislative act, and mere doubt as to its constitutionality must be resolved in favor of the legislature.

I therefore join with Judges STEINFELD and NEIKIRK in dissenting.

STEINFELD, Judge (dissenting).

In considering whether the provisions of House Bill 158, Chapter 189 of the Acts of the 1970 General Assembly, now codified as KRS 160.047 and 160.049, contravene constitutional provisions the events preceding that enactment must be examined. For more than a decade in order to establish a new high school, the Board of Education of the City of Louisville searched for a suitable tract of land in that part of its district generally known as the Upper Highlands.[1] Because of the intense devel-

1. A regulation of the State Board of Education required a minimum of 25 acres for a high school designed for 1,500 students.

opment of the area none was found, but contiguous to the Louisville district boundary in the Jefferson County School District vacant land was acquired adjacent to which were many occupied homes. On the site the Louisville board erected the Atherton High School. By an arrangement between those school boards many children living near Atherton, but within the county school district, were permitted to attend that school. When it became known that this arrangement would be discontinued an unsuccessful effort was made under KRS 160.045 to cause the boards to bring about a transfer of that area into the city school district.

The Atherton area is generally bounded by an expressway and highways carrying an extremely high volume of vehicular traffic. To reach a county school children must cross and travel a substantial distance on such roads. The danger to them is obvious. After a period of frustration the residents of the area persuaded the members of the General Assembly of 1970 to adopt legislation so that children in an area of the type here involved would not be forced to travel long distances to attend another school when their homes are located almost in the shadow of a school they wish to attend. There was no veto by the Governor. They recognized the problem which is found in these situations. The question was placed on the ballot in the November 1970 general elections whereupon 85% of the voters voted in favor of the transfer. These facts are revealed by the record or are of common knowledge of which we should take notice. Kohler v. Benckart, Ky., 252 S.W.2d 854 (1952).

I contend that the legislation is not repugnant to our Constitution. The people adopted constitutional provisions relating only to the common schools giving the legislature great flexibility in dealing with education problems. Section 183 of our Constitution states: "The General Assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the State."

It was claimed that § 4464b of the Kentucky Statutes was unconstitutional in Trustees of Slaughterville Graded School Dist. v. Brooks, 163 Ky. 200, 173 S.W. 305 (1915). It provided:

"Any graded common school district organized and existing under any special act of the Legislature, and any such district that has been or may be hereafter organized under the general laws of this state, may, by and with the written consent of a majority of the legal voters in the territory to be added, extend the limits of such district so as to include such additional territory as the board of education, or trustees of such district, may desire to take within the limits and add to such district."

We said: "It has been held in this state that it is entirely within the discretion of the General Assembly to designate the size of common school districts" and quoted from Crook v. Bartlett, 155 Ky. 305, 159 S.W. 826 (1913):

"A common school district has no permanently fixed boundary. It may embrace the whole of a county, or indeed several counties, or a small portion of a county. The size of common school districts is left entirely in the discretion of the General Assembly."

We held in Brooks that the General Assembly " * * * might surely make two adjacent sections of two counties into either a common school or a graded school district" and made it clear that the General Assembly may delegate to subordinate school authorities its power with respect to the establishment and alteration of school districts. We approved language appearing in 35 Cyc. 834 as follows:

"The power to establish new school districts, or to alter existing ones, may be delegated by the Legislature to subordinate agencies or officers, and in most jurisdictions this has been done. When the power to exercise the authority is made to depend upon the performance

of certain conditions, such as the signing of a petition by a certain number of voters, or the like, the agent or officer cannot act until such conditions have been complied with, and cannot refuse to act when they have been."

Finding the statute constitutional we approved the change made and stated:

"This court is not concerned with, and will not inquire into, the wisdom of the legislative act; and the fact that it has authorized the school authorities in one county to annex to its school district territory in another county will not justify the court in declaring such action invalid when the legislative authority existed and has been properly exercised."

The constitutionality of Kentucky Statute 4464b was reaffirmed in Hume, Sheriff v. Grant, 165 Ky. 723, 178 S.W. 1028 (1915), and again in Board of Trustees of Demossville Graded Common School District v. Board of Education, 193 Ky. 502, 236 S.W. 1038 (1922).

Prowse v. Board of Education of Christian County, 134 Ky. 365, 120 S.W. 307 (1909), held that the system of schools which is most efficient is a matter for the legislature to decide, and in Elliott v. Garner, 140 Ky. 157, 130 S.W. 997 (1910), we said:

"The common school district is a creature of the statute, and, what the Legislature made, it may unmake. The people within a common school district cannot demand that it shall remain unchanged, and what change shall be made rests wholly with the Legislature. The Constitution requires the General Assembly to provide an efficient system of common schools throughout the state (section 183); and how it shall best accomplish this object is purely a matter of legislative discretion."

It was contended in Board of Education of Fayette County v. Board of Education of Lexington Independent School Dist., Ky., 250 S.W.2d 1017 (1952), that KRS 160.045 violated Sections 2 and 183 of the Constitution. We held it did not and said:

"As we pointed out in Board of Education of Kenton County v. Mescher, 310 Ky. 453, 220 S.W.2d 1016, school districts are creatures of the legislature, and the legislature has the power under section 183 of the Constitution, to alter them or even do away with them entirely. We are of the opinion that KRS 160.045 does not violate section 2 or section 183 of the Constitution, notwithstanding that the county school district is given no voice in the loss of its territory."

78 C.J.S. Schools and School Districts § 27a. pp. 663–665 states:

"The formation of a school district is a governmental function. Subject to express constitutional limitations or requirements, and except as it may have delegated such power to a subordinate officer or agency, as considered infra subdivision b of this section, a state legislature has absolute power, or as otherwise stated a state legislature has plenary, full, or full and exclusive, power, which it may exercise by acting directly or indirectly to create, organize, establish, or lay off school districts or other local school organizations, or to provide for their creation or to divide, unite, enlarge, change the boundaries of, or otherwise alter existing districts and organizations, or to provide for such alteration, or to prescribe or change the form of organization and functions of school districts. Also, it may provide for the establishment of school districts for different purposes."

The following appears in 47 Am.Jur. 310, Schools, § 18:

"§ 18. Change of Boundaries; Power of Legislature.—A change of boundaries of school districts may occur in a variety of instances, as in the case of consolidation of districts, division to create new districts, taking from one district and adding to another, cutting off part of a district, annexing unorganized territory

to a district, and the like. The legislature has full power to change boundaries of districts without the consent of the districts affected, except so far as it may be limited by the state constitution.

Whatever the nature of the change, it is settled that the boundaries of school districts may be changed at the will of the legislature. In the exercise of its power, the legislature may act directly, or it may delegate its power to subordinate authorities without violating the general rule against the delegation of legislative power. For example, the power to change boundaries may be conferred by the legislature on administrative agencies, cities or towns, local boards or officers, including town boards, or county boards or officers, or upon a state superintendent of schools. But the authorities are in conflict as to whether power to change the boundaries of school districts may be validly delegated to a court."

In School District No. 3 of Town of Adams v. Callahan, 237 Wis. 560, 297 N.W. 407, 135 A.L.R. 1081 (1941), it was contended that an act which authorized the superintendent of schools to cause the attachment of districts having property valued at less than $100,000 to contiguous districts was unconstitutional. It was held that the delegation of power was not contrary to the Constitution and neither was the act because a different method was accorded to districts having a greater valuation. The court also declared that the act did not contravene other provisions of the Wisconsin Constitution.

In Hoskins v. Ramsey, 197 Ky. 465, 247 S.W. 371 (1923), at issue was the constitutionality of an act providing for the election of school trustees in the same year as members of the House of Representatives of the United States. We declared that Section 148 of the Constitution did not apply to those elections because Section 183 placed the election of school trustees exclusively under legislative control. We said Section 183 " * * * expressly provides for the

establishment of an efficient common school system by the General Assembly, and thus confers upon it full power to pass such laws as may be necessary to accomplish that purpose."

Even though it might successfully be contended that Section 183 does not exempt the legislation under attack the legislature is authorized to enact laws which provide methods for governmental functions which are not uniform state-wide. The following cases illustrate:

An act fixing a minimum school tax in cities of a given classification, City of Louisville v. Commonwealth, 134 Ky. 488, 121 S.W. 411 (1909); a statute regulating fees of officers in counties having a population of more than 75,000, Commonwealth v. Thomas' Adm'r, 140 Ky. 789, 131 S.W. 797 (1910), Winston v. Stone, 19 R 1483, 102 Ky. 423, 43 S.W. 397 (1897); an act authorizing the adoption of a commission form of government by a city of the second class, Bryan v. Voss, 143 Ky. 422, 136 S.W. 884 (1911); an act classifying the requirement of a building inspector according to the classification of cities, Jones v. Russell, 224 Ky. 390, 6 S.W.2d 460 (1928); an act fixing compensation of officers in counties having a designated population, Herold v. Talbott, 261 Ky. 634, 88 S.W.2d 303 (1935); a statute requiring that the salary of the jail physician of Jefferson County be paid by the county and the city of Louisville although that legislation was restricted to Jefferson County alone, Connors v. Jefferson County Fiscal Court, 277 Ky. 23, 125 S.W.2d 206 (1938); an act applicable only in certain class cities providing for the payment by the state for street improvements in front of state property, Logan v. City of Louisville, 283 Ky. 518, 142 S.W.2d 161 (1940); and an act authorizing any city of the third class to operate its combined utilities even though it applied to one city only, Settle v. Jones, 306 Ky. 9, 206 S.W.2d 59 (1947). In Jefferson County Fiscal Court v. Trager, 302 Ky. 361, 194 S.W.2d 851 (1946), we held that a law requiring excess fees of the county tax

commissioner in counties containing a city of the first class to be paid into the state treasury was not prohibited by Sections 59 or 60 of the Constitution as local legislation.

In Metcalf v. Howard, 304 Ky. 498, 201 S.W.2d 197 (1947), we said: "What is suitable for Jefferson County, with 400,000 inhabitants, principally urban, is not suitable for Robertson County, with a population of 3,500, which is wholly rural." In speaking of Sections 59 and 60 of the Constitution we continued, " * * * this court has held, under a broad interpretation, that certain class legislation for counties based upon population is valid where the classification can be deemed reasonable or rational under the particular circumstances to which the law applies."

Shaw v. Fox, 246 Ky. 342, 55 S.W.2d 11 (1932), declared that an act providing for three magisterial courts with salaries being paid to each justice of the peace in all counties containing a city of the first class was valid. It was claimed that the statute was " * * * local or a special or class legislation * * *" contrary to subsections 1 and 18 of Section 59 of our Constitution. In a most comprehensive discussion it was stated:

"The power of classification for legislative purposes rests with the Legislature, subject to the constitutional limitation or restriction that it must rest on some natural and reasonable difference which appears reasonable and just in relation to the act in respect to which the classification is proposed. The Constitution permits the Legislature to indulge in making classifications of subjects of legislation for the purpose of making different classes, for the meeting of different contingencies, naturally requiring different legislation in order that the Legislature may adopt general legislation to meet the needs of the people, to promote some public object, or the welfare or interest of the general public. Smith et al. v. Board of Trustees, 171 Ky. 39,

186 S.W. 927; Jones v. Russell, 224 Ky. 390, 6 S.W.2d 460. Such classification will not be disturbed by the court unless so manifestly unfounded, arbitrary, or unjust as to impose a burden upon, or exclude, one or more of a class, without reasonable basis in fact. City of Louisville v. Coulter, 177 Ky. 242, 197 S.W. 819, L.R.A. 1918A, 811; Mansbach Scrap Iron Co. v. City of Ashland, 235 Ky. 265, 30 S.W.2d 968; Jones v. Russell, supra."

What classification is reasonable rests in the discretion of the legislative body in the first instance and in the second it is in the province of the courts to adjudicate when it should be classed as arbitrary or unreasonable. In Williams v. Nall, 108 Ky. 21, 55 S.W. 706 (1900), we held that the action of the legislature in making a particular classification will not be disturbed unless it is manifestly arbitrary and unjust. Elrod v. Willis, 305 Ky. 225, 203 S.W.2d 18 (1947).

In Fraysure v. Kentucky Unemployment Compensation Commission, 305 Ky. 164, 202 S.W.2d 377 (1947), we wrote: " * * * §§ 59 and 60 forbid special or local legislation where a general law can be made applicable, (but) we have said in a long line of decisions that these sections do not prevent the enactment of laws making reasonable classifications, and it is only where the classifications are arbitrary and unreasonable, so as to exclude one or more of a class without a reasonable basis, that the Act is void." Also see Allison v. Borders, 299 Ky. 806, 187 S.W.2d 728 (1945).

No county in this Commonwealth approaches the density of population that existed in Jefferson County at the time of the enactment of the contested legislation or now obtains. The problems encountered by the City of Louisville School District in locating sites for schools are unique in this state. As in the cases above referred to the legislature found that a special problem existed, hence the enactment that in *all* counties containing a city of the first class (there is only one at this time although

Fayette County is approaching or may have reached the required status) a different method for transferring school territories was provided.

In 16 Am.Jur.2d 893, Constitutional Law, § 510 it is said that:

"The equal protection clause relates to equality between persons as such, rather than between areas. Consequently, it is well settled that the Constitution of the United States in securing the equal protection of the laws does not prohibit legislation which is limited as to the territory within which it is to operate."

In that same volume at page 895 in § 511 it is written:

"The rule is well settled that under unusual circumstances and for most purposes, the legislature may, in the exercise of the various powers of state sovereignty which it possesses, employ population as a basis for classification, making distinctions applicable to people of different localities on such grounds, without violating any of the federal or state constitutional guaranties of equality. Legislation affecting only certain cities, its operation based on population, upon the fact that they are cities belonging to a particular class, has repeatedly been held valid as against the objections that it violates state constitutional provisions requiring a uniformity in the operation of laws or forbidding special or local legislation, provided it is reasonable, and not arbitrary."

Supporting this concept of law are Chandler v. City of Louisville, 277 Ky. 79, 125 S.W.2d 1026 (1939) and City of Louisville v. Coulter, 177 Ky. 242, 197 S.W. 819 (1917).

Misunderstanding among the people exists because city school district boundaries and the city boundaries are not coterminous. Board of Education of City of Corbin v. City of Corbin, 301 Ky. 686, 192 S.W.2d 951 (1946). Resentment occurs when a child living almost on the door step of one school is forced to travel long distances to reach another school. The people revolt against imposing that danger on the children and against the utter waste of tax funds used in bussing children across town when there is no valid reason therefor. Ample justification existed for an act furnishing a practical method to eliminate these objectionable conditions. The majority opinion runs counter to the rule that the courts should not declare an act unconstitutional unless it clearly violates the Constitution. Campbell v. Com., 229 Ky. 264, 17 S.W.2d 227, 63 A.L.R. 932 (1929). Cf. Pardue v. Miller, 306 Ky. 110, 206 S.W. 2d 75 (1947); Asbury v. Robinson, Ky., 409 S.W.2d 508 (1966) and 16 Am.Jur.2d 348, Constitutional Law, § 145. This one does not for it is quite apparent that school districts have no territorial integrity and are always " * * * subject to the reserved power of the State * * * to change its territory according to current educational needs and good educational principles." Board of Education of Union Free School Dist. No. 1 of Towns of Bethlehem, Coeymans and New Scotland v. Wilson, 303 N.Y. 107, 100 N.E.2d 159 (1951).

We announced that we may " * * * not concern ourselves with the wisdom of the education program which the Legislature has provided or has permitted to develop * * *" in Jefferson County Board of Education v. Goheen, 306 Ky. 439, 207 S.W. 2d 567 (1947).

I believe the general assembly had the power to enact a bill revising the boundary of the Louisville and Jefferson County School Districts. It chose a different method by which the people in the area made the choice. Why then should this district be denied that which the legislative and executive branches of our state government have made possible and the people have demanded? " * * * (S)tatutes should be construed whenever possible so as to uphold their constitutionality." United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (decided April

21, 1971). Beyond question it is judicially possible to hold this Act constitutional. I respectfully submit that my judicial brothers have taken an unauthorized and incorrect position. Supported by the cited cases and with all the judicial fiber of which I am possessed I respectfully and strongly dissent.

NEIKIRK, J., joins in this dissent.