CASE 10—ACTION TO ENFORCE LIEN—MARCH 11.

## The Safety Building & Loan Co. v. Ecklar.

APPEAL FROM HARRISON CIRCUIT COURT.

106   115
106   188
106   293
106   295

106   115
120   799

106   115
138   662

1. USURY—BUILDING & LOAN ASSOCIATIONS.—The interest charged by a building and loan association to its borrowing members is usury if in excess of six per cent; and any act authorizing such associations to charge in excess of that amount is unconstitutional.

2. BUILDING AND LOAN ASSOCIATIONS—EXPENSE OF OPERATING.—A member of a going building and loan association is not chargeable with his proportionate share of the expense of carrying on the business, the profits of the investment being set off against the expense of operating; and the date of his ceasing to pay is a starting point for a new principal upon which interest is to be computed without any charge of expense.

L. H. JONES FOR THE APPELLANT.

1. Kentucky is the only State in the Union that has failed to sustain as constitutional an act similar to the Kentucky building association law. Simpson v. The Ky. Citizens Bldg. Assn., 19 Ky. Law Rep., 1176.

2. Of the States which, like Kentucky, had applied to these associations the statutes against usury, holding that the contract between an association and a borrowing member is simply a lending and borrowing, which States include Conecticut, Nebraska, North Dakota, North and South Carolina, Pennsylvania and Texas, all of them have since enacted laws exempting associations from the operation of the statutes against usury, except only Texas and South Carolina, and the courts of all

these States have sustained such acts as not being in violation
of the provisions in their constitutions prohibiting local or
special acts "to regulate the rate of interest" or to confer ex-
clusive or special privileges, because, they hold, such acts are
general laws, not local or special acts. Rhodes v. Homerstown
Assn., 82 Pa. St., 180; Livingston Assn. v. Drummond, 68 N. W.
R., 375; Vermont Trust Co. v. Whithed, 2 N. Dakota, 82; Mu-
tual Assn. v. Wilcox, 24 Conn., 147; Savings Bank v. Allen, 28
Conn., 97; Holmes v. Smythe, 100 Ill., 413; Peoples Assn. v.
Billings, 104 Mich., 186.

3. The judiciary can not pronounce a statute unconstitutional and
void because it may, in the opinion of the court be impolitic,
unjust or oppressive, or because it appears to violate the genius
and spirit of our institutions. And if there be a doubt on the
subject it is the duty of the court to resolve it in favor of the
validity of the statute. Purnell v. Mann., 105 Ky., 87.

4. Building associations are permitted to charge their borrowing
members premium and interest in excess of the established
rate of interest in all the States of the Union except only Ken-
tucky, Texas and South Carolina. Montgomery Mutual Bldg.
& L. Assn. v. Robinson, 69 Ala., 413; Reeves v. Ladies' Bldg.
Assn., 56 Ark., 335; Mutual Savings Bank Bldg. Assn. v. Wil-
cox, 24 Conn., 147; Pabst v. Bldg. Assn., 1 McArthur, 385 (Dist.
of Columbia); Parker v. Fulton L. & Bldg. Assn., 46 Ga., 166;
Holmes, &c., v. Smythe, &c., 100 Ill., 413; McLaughlin v. Assn.,
62 Ind., 264; Hawkeye Benefit & L. Assn. v. Blackburn, 48 Iowa,
624; Massey v. Bldg. Assn., 22 Kan., 624; Amer. Homestead Co.
v. Linnigan, 46 La., Ann., 118; Robertson v. Amer. Homestead
Assn., 10 Md., 411; Delano v. Wild, &c., 6 Allen, 1 (Mass.);
Bldg. & L. Assn. v. Billings, 104 Mich., 187; Central Bldg. &
L. Assn. v. Lampson, 60 Minn., 424; Sullivan v. Assn., 70 Miss.,
94; Hammerslough v. Kansas City B. & L. Assn., 79 Mo., 84;
Livingston L. & Bldg. Assn. v. Drummond, N. W. R., vol. 68,
p. 375 (Neb.); Shannon v. Dunn, 43 New Hamp., 198; Clarks-
ville Bldg. & L. Assn. v. Stevens, 26 N. J. Eq., 365; Citizens
Mutual L. Assn. v. Webster, 25 Barb., 271, 355 (N. Y.); Latham
v. Washington Assn., 77 N. Car., 145; Vermont L. & Trust Co.
v. Whithed, 2 N. Dakota, 82; Rhodes v. Homerstown Bldg. &
Sav. Assn., 82 Pa. St., 180; Hagerman v. Ohio B. & S. Assn.,
205; Patterson v. Workingmen's Bldg. & L. Assn., 14 Lea., 677
(Tenn.); White v. Mechanics Bldg. Fund Assn., 22 Grattan,
233 (Va.); Pfeister v. Wheeling Bldg. Assn., 19 W. Va., 719.

5. Building associations can not be operated on a basis of lending their money at six per cent., and the effect of the opinion in the Simpson case, if allowed to stand, will be, inevitably, to drive all associations of any consequence out of business.

6. Our statute books are full of acts which confer upon one class of corporations or individuals privileges or corporate powers not conferred upon other corporations or individuals, but the acts are not therefore unconstitutional, for the privileges they confer are not exclusive or special and the acts are not local or special, because they include all of the class to which they refer.

7. Borrowers in building associations are also stockholders and being stockholders are liable to pay their part of the expenses and share their part of the losses. Simpson v. Ky. Citizens B. & L. Assn., 19 Ky. Law Rep., 1176; Rogers, Recr., v. Rains, 18 Ky. Law Rep., 768; Henderson, &c., Assn. v. Johnson, 88 Ky., 197; Herbert v. The Association, 11 Bush, 304.

8. In appellant association the amount which each holder of installment stock is to contribute to the expense fund is fixed by contract when he subscribes for the stock:

(a) By the by-laws, which in the face of the stock certificate he accepts, are expressly made a part of the certificate.

(b) By an endorsement on the certificate, in which it is stated what part of his monthly payments is to go into the expense fund and what part into the loan fund.

SWINFORD & OSBORN FOR THE APPELLEE.

This case in its essential features is controlled by the case of Simpson v. Kentucky Citizens Bldg. & L. Assn., 19 Ky. Law Rep., 1176, and must be affirmed unless that case be overruled.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In this case we are asked to review the question of usury under our building and loan statute. We have the advantage of the brief of one who is familiar, not merely with the legal aspects of his client's cause, but familiar as well with the practical working of a successfully conducted modern building and loan association,—so successful indeed, that the association, in a long course of business,

has never declared less than a 13 per centum dividend. The real plea offered as a reason for a revision and reversal of the Simpson case (19 Ky. L. R., 1176), [41 S. W., 570, and 42 S. W., 834], is that the statute, as understood generally, has afforded an unusually profitable field for the investment of money secured by mortgage on real estate, and the opportunity, after legal advice, has been seized by thousands of investors. We do not mean to say that the advantages secured to the borrower by this system of investments has not been urged, but, with candor, counsel has conceded that the borrower pays excessive interest for these advantages.

Turning to the opening section of the statute (Ky. St., sec. 854), we find that "any number of persons not less than nine, may associate for the purpose of forming a corporation to accumulate the savings of its members paid into such corporation in fixed periodical installments, and lending to its members the funds so accumulated."

An appreciation of the objects and purposes of such an association, as they are set out in this initial section is presumably the consideration, in large measure, which induced the General Assembly to confer, or to attempt to confer, on such associations peculiar rights and powers in the collection of dues, interest, premiums, and fines, not conferred on, or common to, individuals or other corporations. We notice, as a matter of primary importance, the *source of the funds* of the organization. They are to consist of accumulations of "the savings of the members." This language would of itself imply a gradual accumulation or heaping up of the pittances or small contributions of the members. But, as if to leave no room for doubt here, the statute in express terms erects the entire superstructure on an accumulation of funds "paid into the cor-

poration in fixed periodical installments." This is a matter of vital moment, and so made by the very terms of the law.

When the principle is departed from, the organization becomes a mere money-lending, dividend-paying corporation, entitled to the equal protection of the law of the land with all other such corporations, and to no other. On this point the Supreme Court of North Carolina, in Meroney v. Association, 116 N. C., 898 [47 Am. St. Rep., 841; 21 S. E., 924], said of an association similar to appellant: "If we consider the manner in which its funds are to be raised, we find that it is not by accumulating of funds from monthly subscriptions or savings of its members, but mainly by inducing capitalists to invest their surplus in one or the other of the kind of stock provided in the following by-laws: '(2) Full-pay interest bearing stock in class B, which shall be sold at $50 per share, and which shall bear interest at 6 per cent. per annum, payable semi-annually, on $50 per share,' etc."

In a succeeding section of our statute we find authority for the issual of full-paid stock to members, but there is, we believe, no express power conferred to declare dividends in advance of maturity of stock. These features, however, are leading ones in the plans of the associations doing business in this State.

The appellants articles of incorporation provide that its stock may be fully paid for in advance, at not less than 50 per cent. of the par value of the stock, and the payment of annual or semi-annual dividends on such stock may be made, and different classes may be issued, on which monthly or other periodical payments of different amounts may be made; and the cor-

poration may also issue permanent nonwithdrawal investment stock, to be paid for at par value in advance.

Pursuant to these articles, by-laws were enacted providing that: "Single-payment stockholders should receive $50 per share and 8 per cent. per annum interest; the semiannual coupon dividends constituting a part of such interest. That full-paid stockholders should receive $100 per share, and 8 per cent. per annum interest; the semiannual coupon dividends constituting a part of such interest."

Other features of a kindred character are found, calculated manifestly to make the plan attractive to capitalists seeking unusually profitable investments. We regard these features as wholly foreign to the purposes and objects of a building and loan association. The exercise of these powers which are common to other corporations is a gross perversion of the spirit and design of such associations, and when they are exercised the distinctive features of such associations are so obliterated, or, speaking more accurately, so merged into the ordinary money-making corporation, that the institution is a building and loan society in name only.

Judge Endlich says: "As to participation in profits, which is but another name for the declaration and enjoyment of dividends, 'the scheme has reference to the final adjustment of accounts, not to any intermediate realization.'" And, speaking further as to the purposes of such an association, the same author says "To all practical intents, it may be said to be to enable a number of associates to combine and invest their savings to mutual advantage, so that fram time to time any individual among them may receive, out of the accumulation of the pittances which each contributes

periodically, a sum, by way of loan, wherewith to buy or build a house. . . . It is only so far as they serve these purposes, and are confined to the objects legitimately involved therein, that the acts of building associations fall properly within the powers granted. As soon as they transgress these limits they are *ultra vires.*"

Of course, if the laws governing the association authorize the exercise of the powers to which we have referred—of issuing paid-up stock and declaring dividends before "the final adjustment of accounts," of selling preferred stock and other powers common to corporations generally—it may not be said in strictness that such acts are *ultra vires* the corporation; but if the exercise of these powers puts the association into the same class and on a level with other corporations engaged in the business of lending money and selling stocks, then the same general laws should control the association as control other corporations engaged in the same or similar business.

It was in view of our conviction that these associations were exercising powers far beyond those which could be exercised as building and loan associations proper, and which placed them, in our judgment, on a level with other corporations engaged in loaning money and dealing in stocks, that induced us, in the Simpson case, to deny them the right to collect special and usurious rates of interest on their loans.

The question, in a sense, was one of fact as well as one of law. If we were right in the assumption that these associations were so engaged under legislative authority so empowering them, then the Legislature, we declared, was incompetent to confer such authority, and, we might have added, incompetent to make such a vicious, arbitrary and unnatural classification. We assert it to be

elementary that the true test whether a law is a general one, in the constitutional sense, is not alone that it applies equally to all in a class—though that is also necessary—but in addition, there must be distinctive and natural reasons inducing and supporting the classification. A law does not escape the constitutional inhibition against being a special law merely because it applies to all of a class arbitrarily and unreasonably denied.

Counsel says, "If a law applies to all of a class, and operates throughout the State, it is not local or special," and cites what he deems a noted authority on this point. "Interdicted special laws are those that rest upon a false or deficient classification. Their vice is that they do not embrace all of a class to which they are naturally related." State v. Parsons, 40 N. J. Law, 17.

The particular vice of the law under consideration in that case was that it did not embrace all of a class to which it naturally related. But we hold that a failure to embrace all of a class to which the proposed legislation naturally relates is not more fatal than if the legislation is so broad in its scope as to embrace objects not naturally and reasonably belonging therein. If the mechanics' lien law had been so drawn as to give liens on the debtor's property on debts due to bankers or merchants, the classification would have been faulty and vicious. And we are referred by counsel to this lien law as an instance of a general law, applicable to all of a class, which must be declared unconstitutional, if the general law applicable to all building and loan associations is to be deemed obnoxious to the Constitution as a special law.

We regard this lien law in favor of mechanics, however, as founded on a reasonable and natural classification. The statute creates no debt in favor of the mechanic, but gives

the workman an additional remedy merely for its enforcement. It is founded upon natural justice, and rests on the principle that when a mechanic or materialman incorporates into the property of another his own labor or material he has himself a qualified property therein, which he is allowed to follow. The expenditure of his time and labor results in an accession to the property and enhances its value, and the statute which favors the workman or materialman makes a natural, appropriate, and reasonable classification.

. In State v. Hammer, 42 N. J. Law, 435, it is said: "But the true principle requires something more than a mere designation by such characteristics as serve to classify, for the characteristics which thus serve as the basis of classifications must be of such a nature as to make the object so designated as peculiarly requiring exclusive legislation. There must be a substantial distinction, having reference to the subject-matter of the proposed legislation, between the objects embraced in, and those excluded from, such legislation."

The provisions of chapter 56, under which appellant organized, do not confer the powers authorized by its articles of incorporation and its by-laws. It may be that the act of 1882 (Gen. St., p. 773) does so in part. But conceding that the General Statutes and the act referred to, together with the provisions of our present general corporation law, do confer these powers, directly or indirectly, and that they are powers incident to corporations generally, we are fully convinced that no such powers are compatible with the aim and design of building and loan associations as in fact intended to be authorized by the Legislature. And, moreover, to the extent that such powers are conferred, the Legislature thereby destroyed the distinc-

tive marks which characterize building and loan associations. And when on this hybrid it attempted to confer special privileges, it went beyond its constitutional power.

Coming now to the additional question raised on this appeal, we find the appellant contends that under the former decisions of this court the borrower is chargeable with his proportionate share of the expenses of carrying on the business of the association whilst he was a member. When the concern has ceased to be a "going one," and its affairs are being wound up, there is no sort of doubt that the borrower must share his *pro rata* part of the losses and expenses of winding up. When the concern is going, however, a different rule seems to apply. It may be that the same rule, theoretically, applies, but it seems to be assumed that the profits of the investment in the stock of a going concern are set off against the borrower's share of the cost of maintaining the organization.

At any rate, whether this is the reason or not, the rule is that on being sued the borrower is chargeable with his loan and legal interest and fines, unless the latter are excessive and oppressive, and is credited with all payments, whether made as dues, premiums, or interest.

In this case it appears that the profits distributed on the borrower's stock are within a dollar or so of appellee's share of the expense of the concern, as charged by appellant, up to the time appellee ceased to pay his dues, interest and premium. These profits are not credited to appellee in the judgment below, nor is he charged with the expense; and in this respect there can be no complaint by either party. But appellant seeks to continue the charge of ten cents per month on each share of stock held by appellee from the time he quit paying, viz., from October, 1896, until this suit was instituted.

We are inclined, however, to regard the date at which

appellee quit as the starting point for a new principal, on which interest only is to be computed and added thereto, without further charge for expense. In effect, this failure to pay may be regarded as terminating the borrower's connection with the company as a stockholder, and he thereafter obtains no benefits, and shoulders no burdens.

The judgment below conforms to these views, and is therefore affirmed.