## Denton v. Potter et al.

### Oct. 15, 1940.

Robert M. Coleman, Judge.

Joe S. Garman and August J. Winkenhofer, Jr., for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This suit challenges the validity of Chapter 108 of the Acts of the General Assembly of 1940, Sections 4215a-1 to 4215a-12, inclusive, Kentucky Statutes, 1940 Supp., which defines the word "peddler" and imposes a license tax on each peddler with a vehicle.

The plaintiff, M. D. Denton, alleged in his petition that he owned and operated a peddler's truck or automobile in Warren county, and sold and delivered to residents of Warren county his goods, wares, and merchandise. He set out the provisions of the challenged Act, alleged that it violated both the State and Federal Constitutions, and sought to enjoin the collection of the license tax imposed by the Act. A demurrer to the petition was sustained, and, the plaintiff declining to plead further, his petition was dismissed. He appeals.

Section 1 of the Act defines the word "peddler" as follows:

"Except as otherwise herein provided the word 'peddler' means any person who without previous order carries goods, wares and merchandise from place to place either within or without the limits of an incorporated city or town in person or by agent, on foot or by vehicle, and sells or offers or exposes for sale for delivery at the same time at retail or at wholesale, or who sells or offers for sale from any vehicle, booth, tent, roadside or temporary stand any goods, wares or merchandise at wholesale or retail."

Section 2 exempts from the application of the Act certain classes of persons who are not intended to be included in the definition of "peddler." Section 3 reads: "The annual license fees required by this Act are as follows: (a) For each peddler with a vehicle, twenty-five dollars ($25.00)."

Subsequent sections require each person deemed to be a peddler under the Act to obtain a license from the clerk of the county court and to pay a license fee of $1 therefor; and a penalty is provided for his failure to procure a license before selling or offering for sale any goods, wares or merchandise. Section 12 of the Act reads: "The Clerk, for filing application and issuing license under this Act, shall receive a fee of $1.00 for each license."

It will be noted that of all the persons declared to be peddlers within the meaning of the Act only a peddler with a vehicle is required to pay a license tax. A peddler who travels on foot or who sells or offers for sale from any vehicle, booth, tent, roadside or temporary stand any goods, wares or merchandise is required to obtain a license from the county clerk, but no tax is imposed on him. Appellees contend that each peddler with a vehicle is required to pay a license tax of $25 plus a fee of $1 to the clerk for filing the application and issuing the license, or a total license tax of $26, and that all other peddlers are required to pay a license tax of $1, which is the fee paid to the clerk. The license tax of $25 imposed upon each peddler with a vehicle and the clerk's fee of $1 are wholly separate items. One is a tax which Section 8 of the Act requires to be paid into the State Treasury and credited to the General Expenditure Fund, and the other is the clerk's compensation for issuing the license.

Undoubtedly, the Legislature may classify and subclassify trades, occupations, and professions for the purpose of licensing them. Persons engaged in the same occupation or business may be classified and a different license tax imposed on each class, provided there is a reasonable basis for such classification. In the instant case, the Legislature had the right to divide peddlers into the three classes referred to in the Act: that is, (1) peddlers who travel on foot, (2) peddlers with vehicles, and (3) peddlers who sell their goods, wares or merchandise from any vehicle, booth, tent, roadside or temporary stand, and to fix a different license tax for the various subdivisions, but it imposed a tax on peddlers in one subdivision and exempted all others.

The case of City of Covington v. Dalheim, 126 Ky. 26, 102 S. W. 829, 830, 31 Ky. Law Rep. 466, is conclu-

sive of the question before us. There, a city ordinance required all grocers to obtain a license to engage in business. Only grocers using delivery wagons were required to pay a license tax. In declaring the ordinance invalid, this court said:.

"It is competent for the city to select any of the enumerated classes as subjects for license taxes. But it is not competent for it to tax some members of a class set apart by the Legislature and not tax others of the same class. That would not be uniform taxation, and would be repugnant to the Constitution. The grant of power to the city is to tax by license certain specific trades or callings, which the Legislature has itself classified. If grocers are to be taxed, all grocers must be taxed. To be sure, the tax may be graded upon any natural and reasonable basis, as, for example, upon the amount of sales or character of stock of merchandise kept, or, for that matter, by the number of delivery wagons employed, so long as all are taxed upon the occupation of grocers. But this ordinance does not impose a license on all grocers. True, it says that it does; but, as no provision is made for collecting licenses from any grocers, except those who employ delivery wagons, it follows that all who did not employ delivery wagons are not required to pay any license tax. This of itself is not uniform taxation."

In Read v. Graham, 102 S. W. 860, 31 Ky. Law Rep. 569, a municipal ordinance imposed a license tax of $10 on each person, firm or corporation engaged in the business of milk dealer using a vehicle or vehicles in said business. It was held that the ordinance was discriminatory and invalid, since the tax was not levied against milk dealers who did not use a vehicle or vehicles in their business. To the same effect are City of Louisville v. Weikel, 137 Ky. 784, 127 S. W. 147, 128 S. W. 587, and City of Danville v. Quaker Maid, Inc., 211 Ky. 677, 278 S. W. 98, 43 A. L. R. 590.

Appellees cite and rely upon Servonitz v. State, 133 Wis. 231, 113 N. W. 277, 126 Am. St. Rep. 955. In that case it appears that the act of the Legislature under attack subclassified peddlers and imposed a graduated tax on the peddlers thus subclassified. These taxes were as follows: $20 on a peddler traveling on foot, $30 on a

peddler with a pushcart, $45 on a peddler with a one-horse wagon, and $75 on a peddler with a two-horse wagon or automobile. It was said that the tax rates bore some practical relation to the differences in the amount of business that in all reasonable probability would be conducted by the persons in these classifications, and it was held that the act was valid. The act before us, after defining the word "peddler," imposes a license tax of $25 on each peddler with a vehicle, and exempts all other peddlers from any license tax.

The Legislature has the power to require the payment of a license tax on the right to engage in any pursuit, business or occupation, but it is essential to the constitutionality of such tax laws that they apply equally to all persons of a given class. A tax which discriminates between different members of a class or exempts certain members of a class is void. As said in Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 255, 257, 32 Ky. Law Rep. 748, 15 L. R. A., N. S., 195, 129 Am. St. Rep. 238:

"The authority to impose these special taxes does not carry with it the right of discrimination and exemption in any class that is dealt with. The language, 'The General Assembly may by general laws only' provide for this species of revenue, would seem to imply that it was intended that the application of the law should be general, operating equally and alike upon every trade, occupation, and profession that it was designed to reach. If a few, or any number of persons less than all, who follow a designated trade, occupation, or profession may be exempt, while the others are taxed, the law imposing the tax would not be general, but special or local, and forbidden by Sections 59 and 60 of the Constitution."

This does not mean that a business or occupation may not be subdivided and a graduated tax imposed, provided the tax is graduated upon any natural or reasonable basis. City of Covington v. Dalheim, supra; Commissioners of Sinking Fund v. Weis, 269 Ky. 554, 108 S. W. (2d) 515; Fiscal Court of Owen County v. F. & A. Cox Company, 132 Ky. 738, 117 S. W. 296, 298, 21 L. R. A., N. S., 83. In the case last cited, the fiscal court of Owen county, pursuant to the authority delegated to it by the Legislature, passed an order imposing license

taxes on livery vehicles and other vehicles that carried passengers or freight for pay. The taxes were graduated and ranged from $3 for each one-horse delivery rig or buggy to $75 for each three-horse wagon operated as a business for hauling freight for pay and $200 for each four-horse wagon so operated. In declaring the tax on four-horse wagons unjustly discriminatory and void, the court said:

"It may be conceded that a reasonable classification for the purpose of license taxes may always be made. Classification based upon the character of the vehicles and the number of horses used in connection with them may be proper (Smith v. City of Louisville [6 S. W. 911], 9 Ky. Law Rep. 779), but the classification sought to be made in this case is manifestly unequal and unreasonable. It cannot be said to be reasonable because it bears alike upon all owners of four-horse wagons. The class of persons whose occupations are taxed are those who run and operate vehicles for hire. The taxing power may subdivide this class, but it cannot unjustly discriminate between the subdivisions so made. As the order in question unjustly discriminates between the owners of three-horse vehicles and the owners of four-horse wagons, it follows that the license fee of $200, imposed upon four-horse wagons, is therefore void."

In view of the foregoing authorities, we are unable to escape the conclusion that the Act before us is unreasonably discriminatory and void.

The judgment is reversed, with directions to overrule the demurrer to the petition and for further proceedings consistent herewith.