COMMONWEALTH of Kentucky, REVENUE CABINET; Kim Burse, in her official capacity as Secretary; Kentucky Revenue Cabinet; Commonwealth of Kentucky, Cabinet for Human Resources; Fontaine Banks, Jr., in his official capacity as Secretary; Kentucky Cabinet for Human Resources; Kentucky Health Care Date Commission, Appellants,

v.

Charles C. SMITH, Jr., M.D.; Fred L. Barnett, M.D.; William B. Monnig, M.D.; Kentucky Medical Association; Stuart G. Yeoman, M.D.; Tim Hulsey, M.D.; Joe Davis, M.D., President, Warren County Medical Society; Joseph Janes, Appellees.

No. 93–SC–946–TG.

Supreme Court of Kentucky.

March 24, 1994.

Rehearing Denied June 23, 1994.

Leonard G. Rowekamp, Smith, Wolnitzek, Schachter & Rowekamp, Covington, Cathy Cravens Snell, Dana B. Mayton, Revenue Cabinet, Division of Legal Services, Masten Childers, II, Edward D. Klatte, Stanley A. Stratford, Office of the Counsel, Cabinet for Human Resources, Frankfort, for appellants.

Bruce F. Clark, C.J. Cronan, IV, Mark Overstreet, Timothy C. Kimmel, Stites and Harbison, Frankfort, Kent Masterson Brown, Cristopher J. Shaughnessy, Lexington, for appellees.

REYNOLDS, Justice.

This appeal is from the final judgment of Franklin Circuit Court for which transfer was granted. CR 74.02. The enactment of House Bill 1, "the provider tax," (codified as KRS 142.201–142.259 and KRS 216.270–216.-287), was the subject and product of an ex-

traordinary session of the 1993 Kentucky General Assembly. The trial court determined that a tax on physicians violated Section 59(15) of the Kentucky Constitution. To the extent provided in this opinion, we reverse the lower court's decision and hold that the health care provider tax as applied to physicians is constitutional.

Under the Medicaid program, of the 7,132 Kentucky licensed physicians and clinics, 4,514 treat and provide services to Medicaid patients. Under House Bill 1, a 2 percent of gross revenue tax was imposed on physicians' services and the tax proceeds are utilized to obtain federal matching money to support Kentucky Medicaid. Thirty-one percent of the state's share of the Medicaid expenditures is derived from the providers' tax monies which are available for the matching funds. The state's general fund provides the rest of the state's share. The question is whether the General Assembly lacks the ability to define the class of providers being taxed.

It is neither the wisdom or expediency of this legislation that concerns the court, for that is a matter for the legislative branch of our government. The sole duty herein is scrutiny of the act in light of the constitution.

■ It is the specter of unconstitutional classification that has formed the basis of appellees' argument. The broad discretion as to classification which a legislature possesses in the field of taxation has long been recognized. Discretion is needed in the formulation of basic and sound tax policies and classification is appropriate for fitting tax programs to both usages and needs. It has been held, because of these factors, that in taxation, more so than in other fields, the legislative bodies possess the greatest of freedom in classification. *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940). Courts, under a rational basis review, accept the legislature's generalizations even when there is an imperfect fit between means and ends. *Heller v. Doe By Doe*, —— U.S. ——, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Further, in a taxation case, unless a rational basis for such law can be completely refuted, then the law may stand as constitutional. Notably, the burden on the ones attacking the legislative tax arrangement is the negation of every conceivable basis which might support it.

Vital state interest does, in fact, in this case mean vital state interest as this state provides medical care to over 500,000 Kentuckians, which is over 14 percent of this state's citizenry, under the provisions of the Kentucky Medical Assistance Program (Medicaid). There is an established federal criteria for states to obtain federal matching funds for the Medicaid program and it was amended in 1991, necessitating a state change. Therefore, to qualify for federal matching money, any tax on health care providers was required to be uniform and broad based within each class of taxed providers. Omitted was the ruse of hold harmless provisions whereby the participating physicians were permitted recoupment.

In this case, were the state to run afoul by imposing a tax considered impermissible under the federal regulations, there would occur a reduction of the state's total medical assistance by the amount of any impermissible health care tax that is collected. This act under consideration applies to *all permissible health care providers*, whether or not they participate in the Medicaid program, and complies with federal criteria because of its uniformity and broad base. The annual provider tax revenues generated by the act have been legislatively estimated to be approximately $147 million, of which $32.4 million is attributable to the tax on physicians.

■ Franklin Circuit Court reasoned that the 2 percent tax on physicians' gross revenues provided for in House Bill 1 violated Section 59 of the Kentucky Constitution, which prohibits special legislation, and utilized the cases of *City of Louisville v. Kuntz*, 104 Ky. 584, 47 S.W. 592 (1898) and *Board of Educ. of Jefferson Co. v. Board of Educ. of Louisville*, Ky., 472 S.W.2d 496 (1971), as supportive of its position. Noted, but without discussion, was that the tax was not limited to 60 percent of the physicians that participated in the Medicaid program, but applied to all physicians rendering health care services in the state. Thus, it was concluded that the increase in funding and

the indirect benefit to only 60 percent of the doctors who did participate in providing services did not support a rationale for overcoming Kentucky Constitution Section 59(15). The classifications were deemed to be illogically related to the purpose of the act. We find such conclusion unacceptable.

The enacted legislation and federal criteria as to qualification for federal matching money forms a rational basis in the General Assembly's actions resulting in House Bill 1. These federal mandates were not illusionary, but were real and pressing at the time of the legislation. Simply put, the Kentucky statute was designed to meet the federal statute which provides and enumerates the specific requirements as to the class of health care providers that may be taxed in order to qualify for matching funds. The trial court was in error by finding the classifications illogically related to the purpose of the act.

The mammoth scope of the Medicaid program provides such an enormous subsidy to the health care system so as to benefit all health care providers, whether they participate in direct reimbursement provisions or not. It follows that it is not illogical for the General Assembly to tax the health care industry for 31–plus percent of the state's funds which are to match the scope of the much larger federal funds. The prevalence of provider taxes serves to establish the perimeters of the class providers who could be taxed to fund Medicaid. The Kentucky statute, as the parties appear to concede, is coextensive with the federal law. Thus, when a state elects to enact a provider tax, its discretion in classifying those who will be taxed appears circumscribed by federal law. Thus, defining the class in a coextensive manner with the federal law results in a rational basis for such classification without arbitrariness. The act delineates the class of entities subject to the tax and, thus, the General Assembly necessarily excludes and includes certain entities within the scope of the tax. Judicial approval given to legislative classifications for tax purposes appears to be well established. *Department of Revenue v. Spalding Laundry and Dry Cleaning Co.,* Ky., 436 S.W.2d 522 (1968).

■ It has been further established that classification is permissible when it appears as a natural method of legislation, as long as the classification is neither unreasonable nor arbitrary and, thus, applies equally to all in a class. *Schoo v. Rose,* Ky., 270 S.W.2d 940 (1954). A requisite, therefore, is the rationality of the basis as between the classification established and the governmental purpose to be achieved. As there is no suspect classification in this case, the act meets the rational basis standard to be deemed constitutional.

Section 59(15) of the Kentucky Constitution prohibits "local or special acts" which are "to authorize or regulate the levy, the assessment or the collection of taxes...." The primary purpose of Section 59 and the 29 subsections is the protection of Kentucky's citizenry from special interest groups. *Tabler v. Wallace,* Ky., 704 S.W.2d 179 (1985), *cert. denied,* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). Reasons of a positive nature are necessary for justifying the legislation.

■ To overcome freedom of classification and the presumption of validity requires an explicit demonstration that a tax is hostile and oppressive against particular persons and classes. *Delta Air Lines, Inc. v. Com., Revenue Cabinet,* Ky., 689 S.W.2d 14 (1985). State tax statutes provide many examples of classifications and due process, and equal protection analysis in tax matters requires the court to determine simply whether there is a rational basis for the legislative action. *Federal Communications Commission v. Beach Communications, Inc.,* — U.S. —, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993); *Reynolds Metal Co. v. Martin,* 269 Ky. 378, 107 S.W.2d 251 (1937).

The populace, as a whole, derives benefits from a healthy citizenry. The providers of health care may receive immediate and direct results of a fund that pays their charges/fees for treatment of the indigent. No physician taxed is prohibited from participating in the Medicaid program, but some voluntarily do not participate. Recognizing such, the General Assembly afforded the ability to participate in Medicaid a necessary prerequisite to being subject to the tax.

Supportive of a class legislation is the public purpose of indigent care which forms a reasonable basis for levying a tax on such classes enumerated by the federal government. The legislature, in this case, has acted within the classification perimeters and, in effect, resisted the overtures of health care lobbyists by their revision of the health care provider tax to be used as a portion of the state's matching funds for the federal Medicaid funds. House Bill 1 addresses a completely different legislative situation than the *Tabler* court addressed.

The Florida Supreme Court in the case of *Coy v. Florida Birth–Related Neurological Injury Compensation Plan,* 595 So.2d 943 (Fla.1992), determined there was a rational relationship of a health care related tax imposed on all licensed physicians, not merely obstetricians, to fund a state-wide program which compensates victims of birth-related neurological injuries, despite the fact that not all physicians taxed were obstetricians who would benefit. The basic rationale, in part, is the relationship of a tax to the delivery of health care in general. Herein, all physicians taxed under House Bill 1 may participate in the Medicaid program and receive direct benefits. It is natural and reasonable that the 40 percent of the physicians who pay the tax but do not participate in the Medicaid program may continue their type of practice with a diminished strain on the hospital system. Said otherwise, the 40 percent of the physicians are not in a vacuum in relation to the 60 percent, and there is a rational interrelationship between the two percentages of physicians, with each group having real benefits.

■ Standards applicable are succinctly stated in Justice Wintersheimer's concurring opinion in *Gillis v. Yount,* Ky., 748 S.W.2d 357 (1988), which follows:

Constitutional limitations prohibit only such classification which is not [sic] arbitrary and unreasonable and has no fair and substantial relation to the permissible governmental purpose of the legislation. The classification for taxation is a policy matter for legislative determination. Ordinarily the judgment of the legislature is to be deferred to if there is any just and reason-

able basis to support such a decision. The question then becomes whether it was arbitrary and unreasonable for the legislature to create a separate classification.... (Citation omitted).

Appellees have argued that the provider tax is unconstitutional because the legislature should have enacted a more broadly based tax, the argument being that a classification is unconstitutional as being special legislation if a more general law could have been enacted. Section 59(29) merely adds to the list of 28 prohibitions and states: "In all other cases where general law can be made applicable, no special law shall be enacted." Thus, the legislation must first be special (arbitrary) under the *Gillis v. Yount* test, but relate to a subject not covered in the 28 enumerated subsections for Section 59(29) to be applicable. Stated otherwise, any law not as broad as might be envisioned would be unconstitutional. The fact that an alternative is available to the legislature does not render unconstitutional the alternative which has been chosen by the legislature. For example, the progressive income tax would be unconstitutional, as well as all exemptions from the sales tax. When taken to an extreme, this argument would deprive a legislature of any discretion in making classifications for taxation and from creating exemptions.

■ The enactment of a state statutory plan based on a voluntary federal statutory plan was determined to be general legislation and constitutional under Section 59. *See Waggoner v. Waggoner,* Ky., 846 S.W.2d 704 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 346, 126 L.Ed.2d 310 (1993). *Waggoner* further provides that the fact that the legislature deals with a special subject does not *per se* make it special legislation. *See Kentucky Milk Marketing and Anti–Monopoly Commission v. Borden Co.,* Ky., 456 S.W.2d 831 (1970). A general law relates to persons or things as a class, while a special law relates to particular persons or things of a class, per *Waggoner.* The tax in this case imposed upon the physicians, a federally defined class, meets the definition of a general law. The appellees' argument of an underinclusive class is not persuasive.

The rational basis for enacting this legislation is referenced in this record and existed at the time of the statute's enactment.

■ Sections 1, 2 and 3 of the Kentucky Constitution embrace the equal protection clause of the Fourteenth Amendment to the United States Constitution. While the circuit court omitted any reference/basis for its decision as to whether House Bill 1 violates principles of due process and equal protection, we find that by meeting the test of Section 59, House Bill 1 also meets the test of Sections 2 and 3 of the Kentucky Constitution. Such concern was addressed in *Revenue Cabinet v. Estate of Marshall,* Ky.App., 746 S.W.2d 408 (1988), which holds that classifications were not *per se* unreasonable since a rational basis has been determined for the classifications. Moreover, the *Tabler* court found Section 59 of the Kentucky Constitution to be more than simply restating the generalized language of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Justification under Section 59 equates to reasonable justification under Sections 2 and 3 of the Kentucky Constitution.

■ A cross-appeal, pursuant to CR 74.01, was not filed herein, but has been included among the issues discussed by appellees. The title of House Bill 1 was styled: "An Act relating to health and safety, providing for revenues to finance health care, making appropriations, and declaring an emergency." Violation of Section 51 of the Kentucky Constitution was raised in that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title. . . ." Construction of this section has found a liberal course with all doubts as to compliance resolved in favor of the validity of the legislative action. *Commonwealth ex rel. Armstrong v. Collins,* Ky., 709 S.W.2d 437 (1986). Continuing, if the title furnishes a "clue" to the act's contents, it may pass constitutional muster. *See Talbott, Auditor of Pub. Accts. v. Laffoon,* 257 Ky. 773, 79 S.W.2d 244 (1934). Further illustrative are the cases of *District Bd. of Tuberculosis Sanatorium Trustees of Fayette Co. v. Bradley,* 188 Ky. 426, 222 S.W. 518 (1920); *Anderson v. Wayne Co.,* 310 Ky. 597, 221

S.W.2d 429 (1949); and *Dawson v. Com., Dept. of Transp.,* Ky., 622 S.W.2d 212 (1981). We suggest that a party reading the title to House Bill 1 might conclude that a tax was being imposed to finance health care as it stated ". . . providing for revenues to finance health care. . . ." This argument concerning misinformation or misunderstanding is without merit due to the fact that the appellees were also in attendance during the hearing and the special legislative session. Their presence, coupled with high media visibility and debates, makes it hard to conclude that this legislation comports with the intent of the constitutional framers to invalidate the statute on the ground that its title is not sufficiently descriptive.

■ We do not find that a benefit/burden analysis forms a basis of support for the providers, *Sims v. Board of Educ. of Jefferson Co., Ky.,* Ky., 290 S.W.2d 491 (1956), nor does Section 59(15) of the Kentucky Constitution require exactingly equal treatment. In essence, unequal treatment has been acceptable. *Reynolds Metal Co. v. Martin, supra.*

The appellants agree that the circuit court properly severed Sections 22 through 29 of House Bill 1. Therefore, this matter is a nonissue as it is neither essential to, nor inseparable from the other provisions of House Bill 1.

■ The appellees' motion for the recusal of the three special justices of this court was passed to the merits. The appointment by the governor of three special justices under Section 110(3) of the Kentucky Constitution was occasioned by the recusal of three sitting justices, which appellees now deem to be violative of that section, which provides:

A majority of the justices of the Supreme Court shall constitute a quorum for the transaction of business. *If as many as two justices* decline or are unable to sit in the trial of any cause, the chief justice shall certify that fact to the governor, who shall appoint to try the particular cause *a sufficient number of justices to constitute a full court* for the trial of the cause.

The language of this constitutional section, deemed limiting, simply does not lead to the

interpretation advanced by appellees. To resolve a limiting doubt, if any, one may read and consider, in its entirety, the language in Section 110(3), which provides that the governor "shall appoint to try the particular cause a sufficient number of justices to constitute a full court...." We resolve that a gubernatorial appointment under this section arises from the necessity to appoint two or more special justices, the number of vacancies of two or more being the determinative factor for appointment.

The phraseology which appellees attribute to *Kentucky Utilities Co. v. South East Coal Co.*, Ky., 836 S.W.2d 407, (1992), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 1147, 122 L.Ed.2d 498 (1993), does not flow therefrom in a manner or with a meaning that inhibits the gubernatorial appointment of two justices or a sufficient number that would constitute a full court. The Supreme Court Rules neither address nor provide for the appointment of more than one justice. *Kentucky Utilities, supra,* addressed the authority and manner of appointment when only one justice was disqualified. *Ex parte Auditor of Public Accounts,* Ky., 609 S.W.2d 682, 685 (1980) states this court's position as to the filling of vacancies when two or more justices are recused:

The constitutional check-and-balance relationship between the executive and judicial branches of the government consists of the provisions for filling vacancies in judicial offices and for the appointment of temporary substitutes *when two or more justices of the Supreme Court decline or are unable to participate in the disposition of a cause pending before that court.* Const. Secs. 118, 110(3). Those relationships between the legislature and judicial branches exist by virtue of Const.Secs. 110(4), 111(1), 112(2) and (3) and 113(2) and (3), pertaining to judicial districts and number of judges and justices; ...

This direction has continued to be recognized and followed consistently in those situations requiring the appointment of two or more special justices. *See J.C.J.D. v. R.J.C.R.,* Ky., 803 S.W.2d 953 (1991), wherein all justices of the Supreme Court recused and the disposition of the particular case was decided by seven special justices, appointed by the governor, pursuant to Constitutional Section 110(3), to constitute a full court. The gubernatorial appointment of a "special" justice to the Supreme Court is further addressed in KRS 21A.120(1).

No argument has been sufficiently advanced as to raise an infirmity under the federal and state constitution which results from the governor's fulfilling his duties of judicial appointment under Section 110(3). Neither is there a necessity to develop a convoluted construction supportive of Section 110(3). We acknowledge the argument which has been advanced by the providers pertaining to the governor's active participation in the question of health care reform. The allegation of the appointment of "tainted" special justices ignores those constitutional sections which require the governor to make appointments in light of his constitutional duties. We believe that the question of recusal of each individual special justice has been addressed in this record and was determined as stated in the concurring opinion of *Kentucky Utilities.* Thus, recusal is a personal matter to be decided by each individual justice in the absence of any so-called *per se* disqualification or statutory prohibition.

The appellees' challenges extend even further and relate to the governor, his relationship to and interest in the legislation, political association with the appointees, and the like. Suffice it to say that the affidavits at no point make allegations of impropriety against the three sitting special justices nor have specific allegations of bias or prejudice been raised against them. Special justices and regular justices, when no valid reasons for recusation exist, have a duty to sit. *See Pessin v. Keeneland Ass'n,* 274 F.Supp. 513 (Ky.1967); *Foster v. Commonwealth,* Ky., 348 S.W.2d 759 (1961), *cert. denied* 368 U.S. 993, 82 S.Ct. 613, 7 L.Ed.2d 530 (1962).

To the extent provided in this opinion, we reverse the lower court's decision and hold that the health care provider tax as applied to physicians is constitutional.

STEPHENS, C.J., and S. CAWOOD, B. FLETCHER, III and R. WESTBERRY, Special Justices, concur.

STUMBO, J., dissents by separate opinion in which WINTERSHEIMER, J., joins.

WINTERSHEIMER, J., concurs in part and dissents in part by separate opinion in which STUMBO, J., joins.

STUMBO, Justice, dissenting.

Respectfully, and with some reluctance, I must dissent. I agree with the majority opinion's excellent analysis as to the constitutionality of taxing those involved in health care as a class for the purpose of obtaining federal funding to support Kentucky Medicaid. It is the disparate treatment of the subclasses by House Bill 1 that I find unacceptable.

House Bill 1 (codified as KRS 142.201–142.259 and KRS 216.270–216.287) sets up three classes of health care providers which are taxed at different rates, and one of which is permitted to "pass on" to the recipient of the taxable item or service the tax imposed. Hospitals are taxed at a rate of 2½ percent of gross revenues. KRS 142.203. Health care providers other than hospitals (e.g., physicians, health maintenance organizations, nursing homes for the mentally retarded, and others) are taxed at the rate of 2 percent of the gross revenues. KRS 142.207. Pharmacies and others dispensing out-patient prescription drugs are taxed at the rate of 25 cents per prescription. KRS 142.211. Of this last class, only pharmacies are permitted to pass the tax on to insurers, health maintenance organizations, and non-profit hospital and health service corporations. KRS 142.211(1)(a).

Physicians can, and do, dispense out-patient prescriptions, yet they are forbidden to pass on the 25 cent tax that pharmacies are permitted to pass on. KRS 142.213(1). Additionally, pharmacies are permitted to pass on the same tax to a provider, as defined by KRS 142.207, already subject to taxation; that is, a health maintenance organization which in turn is forbidden to pass on the tax. The result is that a health maintenance organization pays both the 2 percent tax on its gross income and the 25 cent per prescription tax passed through it by the pharmacies. Thus, two members of the same subclass are treated differently. These differences compel me to conclude that these subclassifications are unreasonable and arbitrary in that the members of the subclasses are not treated equally. *Schoo v. Rose,* Ky., 270 S.W.2d 940 (1954).

WINTERSHEIMER, J., joins in this dissent.

WINTERSHEIMER, concurring in part and dissenting in part.

I concur with the parts of the Majority Opinion which apparently endorse the legislative philosophy of dedication of tax funds to a particular perceived need. I also concur with the concept of deference to the General Assembly in matters of taxation in general. I further concur with the analysis of the Fourteenth Amendment and Sections 1, 2 and 3 of the Kentucky Constitution. However, I must respectfully dissent from those aspects of the Opinion which deal with the application of constitutional principles to the specific facts of this case in regard to the subclassification of physicians.

As I noted in my concurring opinion in *Gillis v. Yount,* Ky., 748 S.W.2d 357 (1988), the question becomes whether it was arbitrary and unreasonable for the legislature to create a separate subclassification in this case. The problem centers on the classification of those 60 percent of the physicians who participate in Medicaid as contrasted with those 40 percent of physicians who do not participate in the program in any way. One of the greatest dangers to thoughtful analysis in any case involving taxation and the relationship between the judiciary and the legislature or executive is a generalization. Each case must be carefully examined on its own merit.

Here the principal problem relates to a benefit/burden test which produces an arbitrary tax on those 40 percent of the physicians who do not participate in the program. Such a situation is more than unfair or unequal—it is arbitrary. It is understood that this analysis already accepts the segregation

of physicians from general taxpayers into a class of their own. Classification by the legislature should be affirmed except as here where there is no rational basis and the legislation is arbitrary. *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet,* Ky., 689 S.W.2d 14 (1985).

Any extension of the benefits/burdens test can lead to further assignment of tax revenue from all contractors, engineers and architects who could possibly benefit from providing construction work on the state's highways. The same limited application of taxation and the revenues produced thereby could be applied to lawyers for the benefit of the justice system. The list of potential classifications is endless. The problem with disparate treatment of members of a subclass is that it singles out those who do not participate in a particular program as having derived a benefit therefrom. It is impossible to distinguish the benefit the nonparticipating physicians have in funding Medicaid from that of the general population.

The classification is invalid as it applies to 40 percent of the physicians who do not participate in Medicaid. *Cf. Board of Education of Jefferson Co. v. Board of Education of Louisville,* Ky., 472 S.W.2d 496 (1971).

In this legislation, the classification created is both too narrow and too broad. It is too narrow because it does not include as taxpayers other people who receive payment for services to Medicaid patients such as chiropractors, dentists, nurses, mid-wives and transportation providers. It has always been the law that it is essential to the constitutionality of taxation that it apply equally to all persons in a given class. A tax which discriminates between different members of a class or subclass should be considered void. *Denton v. Potter,* 284 Ky. 114, 143 S.W.2d 1056 (1940).

The legislation does not apply equally to all who are nonphysicians who have been included in the class. There is a difference in tax rates because physicians are taxed at 2 percent of gross; hospitals are taxed at 2-½ percent of gross; and pharmacies are taxed at 25 cents per prescription. In addition, physicians who prescribe medicine are prohibited from passing on the tax to their patients while pharmacies are allowed to pass on their provider tax to third party payers. Kentucky has long prohibited disparate treatment of persons selling medicine as a violation of the Kentucky Constitution Section 59. *Commonwealth v. Payne Medicine Co.,* 138 Ky. 164, 127 S.W. 760 (1910).

Taxing only certain healthcare providers to fund Medicaid is as flawed as would be a system which would tax only school teachers to pay for new educational facilities or taxing only licensed psychologists to pay for public mental health care facilities, or taxing only policemen to pay for victim compensation programs. *Cf. Coy v. Florida Birth–Related Neurological Injury Compensation Plan,* Fla., 595 So.2d 943, Kogan J. dissenting, *cert. denied, McGibony v. Florida Birth–Related Neurological Injury Compensation Plan,* —— U.S. ——, 113 S.Ct. 194, 121 L.Ed.2d 137 (1992). An extension of this idea would perhaps include a tax on grocery store operators on gross receipts to maintain a food stamp program.

The class is too broad because not every physician receives payment from Medicaid. In order for a classification to be constitutional, it must be framed as to be exclusively applicable to the person or things sought to be embraced therein. *Priest v. State Tax Commission,* 258 Ky. 391, 80 S.W.2d 43 (1935). It is clearly a gratuitous oversimplification of the law to announce that all physicians somehow benefit from Medicaid payments. If legislation is so broad in its scope as to embrace objects not naturally belonging therein, it does not pass the test under Section 59 of the Kentucky Constitution. *Safety Building & Loan Co. v. Ecklar,* 106 Ky. 115, 50 S.W. 50 (1899). A more constitutionally valid system might tax physicians who receive payments for services to Medicaid patients.

Physicians are not the direct or intended beneficiaries of Medicaid programs, the indigent patients are. Participating physicians and other healthcare providers are compensated for their services rendered and therefore receive indirect benefits. A number of shortcomings brings the constitutionality of the legislation into question. The problems

include the question of equal protection and arbitrary legislation, the issue of the title not indicating that the bill involves a tax but rather revenue and finance, and veto arguments. The Majority Opinion has properly decided these issues.

The Franklin Circuit Court reasoned correctly that the imposition of a tax on certain physicians was a violation of Section 59 of the Kentucky Constitution which prohibits special legislation. The tax was not limited to the 60 percent of the physicians who participated in the Medicaid program and by assumption benefited thereby, but applied to all physicians rendering health care services in the State. I believe it was incorrectly assumed that an increase in funding was an indirect benefit to those doctors who did not participate.

Although we can only decide the case before us, I do not believe this Court should ignore the fact that there are a number of other cases involving state taxation. The public press reports that the Revenue Cabinet is now involved in 11 major lawsuits. It is not difficult to understand why the taxpayers are very concerned in a society in which ordinary working people will pay in excess of 40 percent of their gross income in taxation. As noted by the Majority Opinion, the question of taxation is a peculiarly legislative function of government. The only role of the court is to review a specific tax on the grounds of arbitrariness or improper classification. Each case must be reviewed on a case-by-case approach.

This Court decided *Commonwealth of Kentucky, Revenue Cabinet v. Cope*, 875 S.W.2d 87 (Ky.1994) on January 31, 1994, to the effect that a legislative grant of exemption was a legitimate classification between private and government pension plans. There is a difference between the imposition of taxes and the grant of an exemption from taxes. It was possibly a shortcoming that the *Cope, supra*, decision did not make it clear that the legislature could exempt all pensions, both private and governmental as one of the options to which the court deferred. The legislature still has that option.

"The power to tax involves the power to destroy" noted Chief Justice John Marshall in *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). The duty of the judiciary is to distinguish between constitutional error and proper deference to the legislature. Unequal treatment really should not be acceptable although it is seemingly approved by the Majority Opinion.

There may be many different views as to how to apply the same standards. The responsibility for fashioning fair tax laws is that of the General Assembly. It cannot be delegated and it cannot be assumed by any other branch of government.

STUMBO, J., joins in this opinion.