ST. LUKE HOSPITAL, INC., Appellant,

v.

HEALTH POLICY BOARD and its Individual Members (Donald B. Clapp, Sherry M. Cooper, Beverly M. Gaines, M.D., Michael J. Hammons, and Sister Michael Leo Mullaney) as Successor to the Commission for Health Economics Control in Kentucky and its Individual Members (Jack F. Waddell, Ed Wilson, and Don Dixon); Cabinet for Human Resources; Masten Childers, II, in his Official Capacity as Secretary of the Cabinet for Human Resources as Successor to Leonard E. Heller; Chris Gorman, in his Official Capacity as Attorney General for the Commonwealth of Kentucky; and St. Elizabeth Medical Center, Inc., Appellees.

No. 94–CA–002038–MR.

Court of Appeals of Kentucky.

Jan. 5, 1996.

Lisa English Hord, Lexington, for appellant.

Robert G. Stevens, Covington, for appellee, St. Elizabeth Medical Center, Inc.

Marie Alagia Cull, Frankfort, for amicus curiae Lourdes Hospital, Inc.

Michael D. Baker, Lexington, for amici curiae Galen of Kentucky, Inc., d/b/a Suburban Medical Center and Humana, Inc., d/b/a Humana Hospital Lexington.

Colleen McKinley, Louisville, for amicus curiae Mercy Hospital of Owensboro, Inc.

Susan B. Turner, Carole D. Christian, Louisville, for amici curiae Baptist Healthcare System, Inc. and Brooklawn, Inc.

Before LESTER, C.J., and COMBS and SCHRODER, JJ.

SCHRODER, Judge:

St. Luke Hospital, Inc. appeals from a judgment of the Franklin Circuit Court, de-

claring unconstitutional that portion of KRS 216B.020(1) granting a limited exemption from the Certificate of Need requirement (KRS 216B.061) for its level two neonatal services. Appellant argues that the circuit court erred in finding that the exemption constitutes special legislation in violation of §§ 59 and 60 of the Kentucky Constitution. We agree and, thus, reverse.

In 1980, the Kentucky Legislature enacted Chapter 216B regarding the licensure and regulation of health facilities and services. The express purpose of KRS 216B is stated in the first section of the statute:

> The General Assembly finds that the licensure of health facilities, health services and health care providers is a means to insure that the citizens of this Commonwealth will have safe, adequate and efficient medical care; that the proliferation of unnecessary health care facilities, health services and major medical equipment results in costly duplication and underuse of such facilities, services, and equipment; and that such proliferation increases the cost of quality health care within the Commonwealth.

To implement this licensure function, the chapter established appellee, Health Policy Board (successor to Commission for Health Economics Control in Kentucky), "for the purpose of acting on applications for certificates of need." The issuance of a Certificate of Need ("CON") is required before a health facility can make certain changes in its physical plant or services offered to the health care consumer. Those changes are set out in KRS 216B.061(1).

Appellant, St. Luke Hospital, Inc. ("St. Luke"), is a non-profit corporation which owns and operates two hospitals in Northern Kentucky—St. Luke East in Fort Thomas and St. Luke West in Florence. In 1990, St. Luke filed a CON application to construct an addition to its West facility for an obstetrical unit and to establish a Level I neonatal nursery [1]. The application also sought approval to transfer eight obstetrical beds from its East facility to its West facility.

Appellee, St. Elizabeth Hospital ("St. Elizabeth"), operates two hospital facilities in Northern Kentucky—St. Elizabeth North in Covington and St. Elizabeth South in Edgewood. At St. Elizabeth South, St. Elizabeth operates a 48–bed obstetrical unit, a Level I neonatal nursery and a Level II neonatal nursery with 11 beds. St. Elizabeth opposed St. Luke's application for a CON for many reasons, one being that if patients in a Level I neonatal facility are in need of Level II care, they must either be treated in the Level I facility or be transferred to a Level II facility, both of which would place patients at great risk. St. Elizabeth also contended that since it already had an obstetrical unit and provided Level I and Level II neonatal services which were not being used to capacity, there was no need for these same services to be offered at another facility in the same area.

In March 1990, the Kentucky Legislature passed Senate Bill 68 which established several exemptions from the CON requirement. The Bill as codified in KRS 216B.020(1) provided as follows:

> The provisions of this chapter that relate to the issuance of a certificate of need shall not apply to family care homes; state veterans' nursing homes; community mental health centers for services as defined in KRS Chapter 210; primary care centers; rural health clinics; private duty nursing services licensed as nursing pools; group homes; end stage renal disease dialysis facilities; free-standing or hospital based; swing beds; special clinics, including, but not limited to, wellness, weight loss, family planning, disability determination, speech and hearing, counseling, pulmonary care, and other clinics which only provide diagnostic services with equipment not exceeding the major medical equipment cost threshold and for which there are no review criteria in the state health plan; nonclinically related expenditures;

1. There are generally 3 levels of neonatal care. Level I is basic newborn infant care. Level II is intermediate acute care and requires a nurse/patient ratio of 1 to 4 as well as specialized equipment. Level III is intensive care and requires a staffing ratio of 1 nurse to 2 infants. This ratio is specified in the State Health Plan. Levels II and III are generally referred to as specialized neonatal care.

the relocation of hospital administrative or outpatient services into medical office buildings which are on or contiguous to the premises of the hospital or *the following health services provided on site in an existing health facility when the cost is less than six hundred thousand dollars ($600,000) and the services are in place by December 30, 1991:* psychiatric care where chemical dependency services are provided, *level one (1) and level two (2) of neonatal care,* cardiac catheterization, and open heart surgery where cardiac catheterization services are in place as of July 15, 1990. The provisions of this section shall not apply to nursing homes, personal care homes, intermediate care facilities, and family care homes; or nonconforming ambulance services as defined by administrative regulation. These listed facilities or services shall be subject to licensure, when applicable. (Emphasis added.)

Prior to the public hearing on St. Luke's application for a CON, St. Luke filed notice with the Commission of its intent to exercise the exemption in KRS 216B.020(1) and implement a Level II neonatal nursery. After the public hearing, the Commission approved St. Luke's CON application as to the obstetrical unit and the Level I neonatal unit. St. Elizabeth appealed the Commission's decision and the Franklin Circuit Court affirmed.

Subsequently, St. Luke constructed and began operating its obstetrical unit and Level I neonatal unit. Pursuant to the Senate Bill 68 exemption, St. Luke also established its Level II neonatal unit which cost less than $600,000 and was licensed and operational prior to December 30, 1991. It is uncontroverted that without the exemption at issue herein, St. Luke's expansion into Level II neonatal care would have required the issuance of a CON.

On July 17, 1990, St. Elizabeth filed a declaratory judgment action in the Franklin Circuit Court seeking to have the neonatal exemption in KRS 216B.020(1) declared unconstitutional as special legislation under §§ 59 and 60 of the Kentucky Constitution. The Franklin Circuit Court ruled that the exemption was unconstitutional special legislation. This appeal by St. Luke followed.

Section 59 and Section 60 of the Kentucky Constitution provide in pertinent part:

§ 59. *Local and special legislation.*—The General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: ...

Twenty-ninth: In all other cases where a general law can be made applicable, no special law shall be enacted.

§ 60. *General law not to be made special or local by amendment—No special powers or privileges—Law not to take effect on approval of other authority than general assembly—Exceptions.*—The General Assembly shall not indirectly enact any special or local act by the repeal in part of a general act ...

A "special act" has been defined in *Reid v. Robertson,* 304 Ky. 509, 200 S.W.2d 900 (1947) as follows:

A classification renders a statute special where it is made to depend, not upon any natural, real or substantial distinction, inhering in the subject matter, such as suggests the necessity or propriety of different legislation in regard to the class specified, but upon purely artificial, arbitrary, illusory, or fictitious conditions, so as to make the classification unreasonable, and unjust.

*Id.* at 903.

It is well established that in order for a law to be constitutionally general and not special legislation, the classification must be based upon a reasonable and natural distinction which relates to the purpose of the act and the legislation must apply equally to all in a class. *Kentucky Harlan Coal Co. v. Holmes,* Ky., 872 S.W.2d 446 (1994); *Graham v. Mills,* Ky., 694 S.W.2d 698 (1985); *Schoo v. Rose,* Ky., 270 S.W.2d 940 (1954). Simply because legislation deals with a special subject matter does not mean it is unconstitutional special legislation so long as the statute meets the above requirements. *Kling v. Geary,* Ky., 667 S.W.2d 379 (1984).

In the legislation at issue, all members within the class of existing health facilities are treated equally. They all have the

same opportunity to take advantage of the exemption at the same cost with the same time constraints. Further, we see no reason why anyone other than a health care facility would be interested in establishing a neonatal unit. The requirement of being an existing facility is a quite natural and distinctive requirement. This is not a case in which one health care facility has been prohibited from establishing a Level II neonatal unit when another has been permitted to do so. It is a case in which one health care facility, which has previously established a Level II neonatal unit, (which previously required a CON, as it did for all other health care facilities at the time) is challenging a competing health care facility's right to establish such a unit without a CON under the current exemption.

In *Tabler v. Wallace*, Ky., 704 S.W.2d 179 (1985), cited by St. Elizabeth in support of its position and the circuit court in support of its ruling, the Supreme Court struck down as unconstitutional special legislation a statute providing that persons engaged in design, planning, supervision, inspection, or construction of an improvement to real property (architects, engineers and builders) are immune from suit for damages or injury caused by any deficiency after expiration of five years following substantial completion of such improvement. The Court adjudged that there was no rational justification for conferring special privileges and immunity upon such classification. The Court rejected attempts to conjecture as to what the legislature's rational justification for the classification was, stating:

> [T]here must be a substantial and justifiable reason apparent from legislative history, from the statute's title, preamble or subject matter, or from some other authoritative source.

*Id.* at 186.

While there is no legislative history for KRS 216B.020(1), KRS 216B.010 provides that one of the purposes for enacting Chapter 216B was "to insure that the citizens of this Commonwealth will have safe, adequate and efficient medical care." Viewing this in

context to KRS 216B.020(1), we see the most obvious reason for the exemptions therein was the immediate need of these health care services in Kentucky. This would certainly explain the time requirement in the statute. This would especially be true for growing areas like Boone County where St. Luke is located [2]. St. Elizabeth's own argument against St. Luke's establishing a Level I neonatal unit (because there is no Level II unit within the same facility) lends further support for the exemption, given the legislative interest in providing safe, adequate and efficient medical care. The justifiable reason for the maximum cost requirement of $600,-000 can also be seen in the language of KRS 216B.010, expressing the legislature's concern over the rising cost of quality health care in the Commonwealth. Lastly, we point out the myriad of other health care services and facilities that are included in the exemption.

In sum, we hold that the exemption in KRS 216B.020 does not constitute special legislation in violation of § 59 or § 60 of the Kentucky Constitution. Accordingly, the judgment of the Franklin Circuit Court is reversed.

All concur.

---

**2.** We would note that there were numerous other hospitals in other counties throughout the state that took advantage of the exemption in question.

*See Tri–City Turf Club, Inc. v. Public Protection and Regulation Cabinet,* Ky.App., 806 S.W.2d 394 (1991).