MINTON, CJ., CONCURRING:
I completely concur with the majority's well analyzed opinion. I write separately to address the weaponization of Sections 59 and 60 in accompanying opinions in both this case and Commonwealth v. Ezra Claycomb .[31] I feel compelled to speak up because I fear this Court risks overstating *606 its role in Kentucky's tripartite government.[32]
"Section[s] 59 [and 60] ... prohibit[ ] 'local or special acts.' "[33] "The primary purpose of ... [Sections] 59 [and 60] is to prevent special privileges, favoritism and discrimination, and assure equality under the law."[34] "A special law is legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favors others."[35] "Simply because legislation deals with a special subject matter does not mean it is special legislation."[36]
As it currently stands, "[t]he test as to whether legislation is special was formulated by this Court in Schoo v. Rose .[37] In order for legislation to be permissible under [Sections] 59 [and 60] ... '(1) [i]t must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification.' "[38]
Considering the accompanying opinions of my colleagues in this case and others, I am convinced that continued adherence to the Schoo test is untenable. It would appear from our precedent that the determination of whether certain legislation constitutes unconstitutional special legislation rests in the hands of a majority of the seven Kentucky Supreme Court justices who can choose to define the "class" at issue in whatever way they would like, because under the first prong of the Schoo test, how one defines the "class" determines whether legislation is constitutional or not.
For example, Justice Keller, instead of articulating how the "class" at issue should be determined under our "longstanding precedent," accepts the Commonwealth's articulation of the "class" created by the Right to Work Act ("RTWA") as "all employers" and "all employees." This articulation of the "class" at issue leads the dissent to then conclude that because the RTWA treats certain employers and employees differently from others-employees under an existing contract mandating labor-organization participation entered into before January 9, 2017, still must contribute to the labor organization, unlike all other employees-the RTWA is unconstitutional special legislation. Justice Wright, on the other hand, has defined the class as "contracts." And because he argues that the RTWA treats some types of contracts differently than others, he concludes in dissent that the RTWA constitutes unconstitutional special legislation.
But instead of defining the "class" at issue in the present case as "all employers" and "all employees," or "contracts," what if we chose to define the "class" as "all labor organizations" because the RTWA is really targeting labor organizations? The RTWA does not differentiate *607 treatment between, for example, labor organizations in western Kentucky versus those in eastern Kentucky-all labor organizations must refrain from forcing employee participation-so therefore the RTWA applies equally to all within the "class." And this simple "reclassification," turns what was once unconstitutional special legislation into constitutional legislation. Simply choosing to define the "class" at issue differently than my colleagues in the dissent changes the outcome.
As evidenced above, how this Court defines the "class" at issue could mean the difference between rendering legislation constitutional versus unconstitutional. Such a fluid determination in defining the "class" at issue-in conjunction with the Schoo test's rigid rule that the law "must apply equally to all in a class" or else the law is unconstitutional-gives the judiciary too much leeway.[39]
Justice Keller believes that I have conceded that the RTWA is unconstitutional special legislation under the Schoo test. I do not concede that point at all. Justice Keller's conclusion here misses my point: the dissent argues the unconstitutionality of the RTWA under "longstanding Kentucky precedent" that fails to articulate any rule for defining the "class" at issue to which the Schoo test then applies. Under the "longstanding Kentucky precedent" that the dissent claims faithfully to apply, a majority of this Court can strike down legislation based on a completely subjective determination of the "class" at issue.
To provide guidance to the judiciary on the important issue of judging whether a piece of legislation constitutes unconstitutional special legislation, I find great wisdom in the words of former United States Supreme Court Justice Benjamin Cardozo. In his analysis of whether a Maryland statute constituted unconstitutional special legislation under Maryland's Constitution, Justice Cardozo stated:
Time with its tides brings new conditions which must be cared for by new laws. Sometimes the new conditions affect the members of a class. If so the correcting statute must apply to all alike. Sometimes the new condition affects only a few. If so, the correcting statute may be as narrow as the mischief. The [Maryland] Constitution does not prohibit special laws inflexibly and always. It permits them when there are special evils with which the general laws are incompetent to cope. The special public purpose will sustain the special form .... The problem ... is one of legislative policy, with a wide margin of discretion conceded to the lawmakers. Only in the case of plain abuse will there be revision by the courts .... If the evil to be corrected can be seen to be merely fanciful, the injustice or the wrong illusory, the courts may intervene and strike the special statute down .... If special circumstances have developed of such a nature as to call for a new rule, the special act will stand.[40]
In Kentucky, the General Assembly is constitutionally entrusted with identifying in changing times what it believes to be mischief and the ability to try to remedy that mischief. In this case, the General Assembly believes that forced labor-organization membership, or at least forced contribution to a labor organization, is a problem.
*608 So it enacted the RTWA, which prevents employees in Kentucky from being forced to support organized labor.
In other words, the General Assembly identified a "condition [that] must be cared for by ... law[,]" i.e., forced labor organization participation. This "condition[ ] affects the members of a class," i.e., employees who are forced into support of a labor organization. The "class" is to be determined as such: who or what is being adversely affected by the condition that the legislation seeks to remedy.[41] As stated, the "class" in this case is "employees who are forced into labor organization membership [or support]" because they are the individuals who are being "adversely affected" by the condition that the legislation seeks to remedy, i.e., forced labor-organization participation. Justice Keller believes that I have defined the "class" at issue as "labor organizations," but fails to recognize that "employees who are forced into labor organization membership" is the class I espouse, having used "labor organizations" earlier simply to illustrate my point about the untenable nature of the Schoo test.
The "correcting statute" in the present case, the RTWA, seemingly does not "apply to all alike," because of the grandfathering-in of pre-January 9, 2017, agreements providing for forced labor-organization participation of employees. In other words, certain employees within the class are being treated differently from other employees within the class because employees bound by pre-January 9, 2017, agreements continue to be forced into labor-organization support. But rendering the RTWA unconstitutional simply on this fact fails to consider Justice Cardozo's wisdom, which seemingly applies an exception to the general rule that that "statute must apply to all alike": "[Kentucky's] constitution does not prohibit special laws inflexibly and always. It permits them when there are special evils with which the general laws are incompetent to cope."[42] The only reason that the RTWA does not treat all employees the same in this instance is that doing so would potentially violate other constitutional provisions, namely, the Contracts or Takings Clauses or both. In this way, a general law would be "incompetent to cope" with a condition our legislature considers to be a "special evil."
Under the Schoo test, however, the General Assembly would apparently be prohibited from attempting to remedy what it believes to be a problem because either (1) the RTWA, if applied to all employees, will violate the Contracts or Takings Clauses, or both, or (2) the RTWA, as it currently stands, is unconstitutional special legislation. This line of thinking, taken to its natural conclusion, would mean that any time parties have entered into a contract, and the General Assembly decides that those kinds of contracts are bad public policy and creates a law preventing such contracts, the law is either (1) unconstitutional special legislation if it exempts from its application contracts already entered into by parties or (2) unconstitutional under the Contracts or Takings Clause if no exemption is afforded. Such an interpretation blocks the General Assembly from ever acting to remedy a purported problem, which is simply an untenable conclusion.
This is Justice Cardozo's point: Determining whether legislation constitutes unconstitutional special legislation requires a flexible analysis, ascertaining the reasons behind everything the legislature is doing.
*609 What is the "condition" the legislature is attempting to remedy? Why is the legislature treating one class differently from another? Why is the legislature treating some members of the class differently from others? Does the legislature have good reasons for doing all of this?
Rather than simply striking down legislation because some people or entities are being treated differently from others, both outside and within the "class" at issue, we must ask why this is the case. Such an analysis is in exact conformance with an Equal Protection Clause analysis. The Equal Protection Clause does not render legislation unconstitutional simply because certain people are treated differently from others. A law that treats people belonging to suspect classes differently from others is not unconstitutional simply on that fact alone. Rather, a law that treats people belonging to suspect classes differently from others is unconstitutional if that law fails to satisfy strict scrutiny review, i.e., if no compelling government interest for doing exists or if the law is not narrowly tailored to accomplish its end.[43]
Under the Schoo test, different treatment of certain members of a class renders a law unconstitutional special legislation. Respectfully, I think that this is an untenable restriction on the legislature's ability to act to solve problems and offends the doctrine of separation of powers. In my view, we should analyze whether a law constitutes special legislation, applying the good judgment of Justice Cardozo: "Only in the case of plain abuse will there be revision by the courts .... If the evil to be corrected can be seen to be merely fanciful, the injustice or the wrong illusory, the courts may intervene and strike the special statute down ...."[44]
The Schoo test proves to be unworkable because of the mystery as to how the "class" at issue is to be defined. Yet the Schoo test, and really all our special legislation precedent, proves to be untenable in another way-by suggesting different ways of analyzing the second prong. Consider the following statements this Court has made over the years about the special legislation analysis:
"A special law is legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favor others."[45]
"When asserting the validity of a classification, the burden is on the party claiming the validity of the classification to show that there is a valid nexus between the classification and the purpose for which the statute in question was drafted. There must be substantially more than merely a theoretical basis for a distinction . Rather, there must be a firm basis in reality ."[46]
"[T]he classification [must] bear[ ] a 'reasonable relation to the purpose of the Act. ' "[47]
*610 "[T]here must be a substantial and justifiable reason apparent from legislative history, from the statute's title, preamble or subject matter, or from some other authoritative source."[48]
No wonder the trial court in this case and in Claycomb had trouble articulating how to analyze the second prong of the Schoo test. And the dissent offers no guidance as to how courts are to do so while continuing to profess faith in the Schoo test as binding precedent. For example, the dissent places the burden on the Commonwealth to articulate the reasons for upholding certain legislation. This may conform to how Yeoman has articulated the rule, but it is not in conformance with Com., Revenue Cabinet v. Smith , another case involving a special legislation challenge: "Notably, the burden on the ones attacking the [legislation] is the negation of every conceivable basis which might support it .[49] No wonder no one can articulate how we evaluate special legislation challenges.
Justice Keller's final point is a suggestion that I have applied different "readings" of our constitutional provisions in Claycomb versus this case. This suggestion fails to appreciate the fundamental difference between the two provisions. Section 14, at issue in Claycomb , involves pure constitutional language that plainly proscribes "delay" in the ability to seek a remedy through the courts. Sections 59 and 60, on the other hand, proscribe "special" legislation-special is a vague term that has been defined and redefined by precedent from this Court. And, relying on our precedent, what exactly is meant by "special" legislation? The dissent insists on adherence to "longstanding Kentucky precedent" in which our Court has attempted unsuccessfully to define what makes legislation special . But truly that precedent is unworkable today.
And while stare decisis is an important guiding principle, it is not absolute:
Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. Adhering to precedent "is usually the wise policy, because in most matters it is more important than the applicable rule of law be settled than it be settled right." Nevertheless, when governing decisions are unworkable or are badly reasoned, "this Court has never felt constrained to follow precedent." Stare decisis is not an inexorable command; rather, it "is a principle of policy and not a mechanical formula of adherence to the latest decision." This is particularly true in constitutional cases, because in such cases "correction through legislative action is practically impossible." Considerations in favor of stare decisis are at their acme in cases involving property and contract rights, where reliance interests are involved ; the opposite is true in cases ... involving procedural and evidentiary rules.[50]
In the words of this Court: "[This Court is] 'not assigned the duty of maintaining the watch as the law ossifies.' At times, through proper analysis, sound jurisprudence *611 mandates we refuse to 'unquestioningly follow prior decisions.' "[51]
Finally, I agree with the majority's conclusion that the Act does not violate Section 55 of Kentucky's Constitution and find the dissent's opposing conclusion unavailing. I only wish to make clear, as the majority seemingly has, that Section 55 cannot, in and of itself, make an otherwise constitutionally sound piece of legislation unconstitutional. "As the Kentucky Supreme Court has explained, if the emergency clause of an otherwise valid statute is invalid, then the statute takes effect at the time it would have become law without an emergency clause."[52] Essentially, even if a violation of Section 55 existed, this point would be moot today because the RTWA would take effect 90 days after adjournment of the session in which it was passed, instead of immediately taking effect. As it stands now, more than 90 days have elapsed since the final adjournment of the 2017 regular session in which the RTWA passed.
Hughes and Venters, JJ., join.

2017-SC-000614-TG, --- S.W.3d ----, 2018 WL 5994975 (Ky. Nov. 15, 2018).

See Hayes v. State Property and Bldgs. Com'n , 731 S.W.2d 797, 799 (Ky. 1987) ("Our role is not that of a super legislature.").

Yeoman v. Com., Health Policy Bd. , 983 S.W.2d 459, 466 (Ky. 1998).

Kentucky Harlan Coal Co. v. Holmes , 872 S.W.2d 446, 452 (Ky. 1994) (overruled on other grounds).

Bd. of Educ. of Jefferson Cty. v. Bd. of Educ. of Louisville , 472 S.W.2d 496, 498 (Ky. 1971).

St. Luke Hosp., Inc. v. Health Policy Bd. , 913 S.W.2d 1 (Ky. App. 1996) (citing Kling v. Geary , 667 S.W.2d 379 (Ky. 1984) ).

270 S.W.2d 940 (Ky. 1954).

Yeoman , 983 S.W.2d at 466 (quoting Schoo , 270 S.W.2d at 941 ) (internal citations omitted).

See Hayes v. State Property and Bldgs. Com'n , 731 S.W.2d 797, 799 (Ky. 1987) ("Our role is not that of a super legislature.").

Williams v. Mayor and City Council of Baltimore , 289 U.S. 36, 46, 53 S.Ct. 431, 77 L.Ed. 1015 (1933) ; see also Jabez G. Sutherland, Statutes and Statutory Construction , 2 Sutherland Statutory Construction § 40:6 (7th ed. Nov. 2018 update).

Necessarily, the "condition that the legislation seeks to remedy" must be legitimate.

Id.

Adarand Constructors, Inc. v. Pena , 515 U.S. 200, 227, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995).

Williams v. Mayor and City Council of Baltimore , 289 U.S. 36, 46, 53 S.Ct. 431, 77 L.Ed. 1015 (1933) ; see also Jabez G. Sutherland, Statutes and Statutory Construction , 2 Sutherland Statutory Construction § 40:6 (7th ed. Nov. 2018 update).

Bd. of Educ. of Jefferson Cty. v. Bd. of Educ. of Louisville , 472 S.W.2d 496, 498 (Ky 1971).

Yeoman v. Com., Health Policy Bd. , 983 S.W.2d 459, 468 (Ky. 1998).

Louisville/Jefferson Cty. Metro Gov't v. O'Shea's-Baxter, LLC , 438 S.W.3d 379, 383 (Ky. 2014) (quoting Mannini v. McFarland , 294 Ky. 837, 172 S.W.2d 631, 632 (1943) ).

Tabler v. Wallace , 704 S.W.2d 179, 186 (Ky. 1985).

Com., Revenue Cabinet v. Smith , 875 S.W.2d 873, 875 (Ky. 1994) (applying rational basis review to a special legislation challenge).

Payne v. Tennessee , 501 U.S. 808, 827-28, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (internal citations omitted) (emphasis added).

Commonwealth v. Terrell , 464 S.W.3d 495, 501 (Ky. 2015) (internal citations omitted)

Puckett v. Lexington-Fayette Urban Cty. Gov't , 833 F.3d 590, 607 n.4 (6th Cir. 2016) (citing Lyttle v. Keith , 264 Ky. 652, 95 S.W.2d 299, 300 (1936) ).